**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MANUFACTURERS AND TRADERS TRUST COMPANY, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation,** | |
| *Plaintiff,* | **08-CV-03093 (VM)** |
| *–against–* | **ECF Case** |
| **HSBC BANK USA, National Association, as Successor Indenture Trustee for the 7.625% Senior Notes Due 2006, the 8.75% Senior Notes Due 2007, the 8.75% Senior Notes Due 2008, and the 7.75% Senior Notes Due 2009 issued by Calpine Corporation**, | **AFFIDAVIT IN SUPPORT OF MOTION TO REMAND TO SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK** |
| *–and–* | |
| **U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for the 10.50% Senior Notes Due 2006 issued by Calpine Corporation,** | |
| *Defendants.* | |

State of New York    )
                     ) ss.
County of New York  )

S. ROBERT SCHRAGER, being duly sworn, deposes and says:

1.      I am a member of the firm of Hodgson Russ LLP, co-counsel for Plaintiff Manufacturers And Traders Trust Company ("M&T").  I submit this affidavit defendants' motion pursuant to 28 U.S.C. § 1447(c) to remand this action to the Supreme Court of the State of New York, where it was commenced on June 12, 2006, on the grounds that it was improperly removed to this Court given that defendants, HSBC Bank USA, National Association ("HSBC") and U.S. Bank, National Association ("U.S. Bank"), both indenture trustees, do not indicate in

their Notice of Removal the citizenship of the note holders they represent. nor where their

respective principal places of business are located. As a result, it is submitted that this action

must be remanded to State Court because defendants have not established that diversity in fact

exists.

2.      This action was commenced in the New York Supreme Court, County of

New York on February 21, 2008.  A copy of the Complaint is annexed as Exhibit A.  It is

brought by M&T, as indenture trustee, on behalf of holders of subordinated debt of Calpine

Corporation ("Calpine") against defendants, HSBC Bank USA, National Association ("HSBC")

and U.S. Bank, National Association ("U.S. Bank"), as indenture trustees, on behalf of holders of

senior debt of Calpine Corporation.  Calpine, an energy company, entered bankruptcy at the end

of 2005 and emerged in January 2008.

3.      This action arises out of a dispute between the holders of senior debt and

subordinated debt instruments.  The senior holders claim that they are entitled to "post-petition

interest", which is disputed by the subordinated holders.  Accordingly, on behalf of the

subordinated holders, M&T seeks declaratory relief that (1) the senior holders are not entitled to

"post-petition interest" under the relevant indentures; (2)  certain of the senior holders waived

rights of subordination with respect to certain breach of contract claims; and (3)  the

subordinated holders are not subordinated to the payment of fees and expenses incurred by or on

behalf of the senior holders.

4.      On March 26, 2008, defendants removed this action to this Court on the

basis of diversity of citizenship.  A copy of the removal petition is annexed hereto as Exhibit B.

5.      Defendants claim that this action involves a controversy between

"citizens of different states" in that M&T is a New York corporation with its principal place of

business in New York, while HSBC and U.S. Bank are national banking associations with their main offices, as set forth in their articles of association, in Wilmington, Delaware and Cincinnati, Ohio, respectively.  The notice of removal is silent as to the citizenship of the noteholders represented by defendants and as to defendants' principal places of business, which HSBC has represented in the past to be New York.

6.     Annexed as Exhibit C hereto is a copy of the Indenture dated as of April 25, 2001, 8.75% Notes due 2007.

7.     Annexed as Exhibit D hereto is a copy of the Amended and Restated Indenture dated as of March 12, 2004, 7.75% Notes due 2009.

8.     Annexed as Exhibit E hereto is a copy of the Indenture dated as of March 31, 1998, 7.875% Notes due 2008.

9.     Annexed as Exhibit F hereto is a copy of the Indenture dated as of March 29, 1999, 7.625% Notes due 2006.

10.     Annexed as Exhibit G hereto is a copy of the Indenture dated as of May 16, 1996, 10.5% Notes due 2006.

11.     Annexed as Exhibit H is a copy of the HSBC website page setting forth its corporate information. http://www.us.hsbc.com/1/2/3/personal/inside/about/corporate-information.  As can be seen, HSBC declares its headquarters to be located in New York, NY.

WHEREFORE, for the reasons set forth in the accompanying memorandum of law, it is respectfully submitted that the instant motion should be granted, this action remanded to the New York State Supreme Court and the plaintiff granted such other and further relief as this Court deems just and proper.

_s/ S. Robert Schrager_
S. Robert Schrager

Sworn to before me
this 23rd day of April, 2008

_____s/_____
Notary Public

4

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

|  |  |
|---|---|
| **MANUFACTURERS AND TRADERS TRUST COMPANY, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation**<br><br>Plaintiff,<br><br>- against -<br><br>**HSBC BANK USA, National Association, as Successor Indenture Trustee for the 7.625% Senior Notes Due 2006, the 8.75% Senior Notes Due 2007, the 8.75% Senior Notes Due 2008, and the 7.75% Senior Notes Due 2009 issued by Calpine Corporation,**<br><br>- and -<br><br>**U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for the 10.50% Senior Notes Due 2006 issued by Calpine Corporation**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **COMPLAINT**<br>)  **Index No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Manufacturers and Traders Trust Company, in its capacity as successor indenture trustee (solely in its capacity as such, "M&T") on behalf of the holders (the "7.75% Convertible Note Holders") of the 7.75% Contingent Convertible Notes Due 2015 (the "7.75% Convertible Notes") issued by Calpine Corporation ("Calpine") pursuant to that certain Indenture, dated as of August 10, 2000 (the "Base Indenture"), between Calpine and Wilmington Trust Company, as predecessor indenture trustee ("WTC"), as supplemented by the Third Supplemental Indenture, dated as of June 23, 2005 (the "Supplemental Indenture," and together with the Base Indenture, the "Indenture"), by and through its undersigned counsel, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      By this action, M&T respectfully asks this Court to resolve a straightforward contract dispute under New York state law as to the meaning of the subordination provisions of the Indenture.  The dispute arises between holders of senior and subordinated debt instruments of Calpine, an energy company that entered bankruptcy at the end of 2005 and emerged in January of this year.  The subordinated debt holders, on whose behalf the present action is brought, acknowledge that under the terms of the Indenture the senior debt holders are entitled to receive priority with respect to the payment of principal and "pre-petition interest" arising under the senior debt instruments — and indeed the senior debt holders have now received such payment in full.  However, the senior debt holders assert that their priority further extends to "post-petition interest" arising under the senior debt instruments, a position that Plaintiff disputes and respectfully submits is contrary to the "Rule of Explicitness" set forth by the New York Court of Appeals in a case squarely on point.

2.      Under Calpine's confirmed plan of reorganization, a portion of the subordinated debt holders' bankruptcy distribution, in the aggregate amount of approximately $170 million, is being (or shortly will be) deposited in escrow pending resolution of the dispute by a court of competent jurisdiction.  Towards this end, this declaratory judgment action has been brought.

## SUMMARY OF ACTION

3.      On December 20, 2005 (the "Petition Date"), Calpine commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The crux of the present dispute between M&T, in its capacity as successor indenture trustee for the

2

7.75% Convertible Notes, and each of the Defendants, in their respective capacities as indenture trustees for five (5) series of senior notes issued by Calpine (the "Senior Notes," and the holders of such notes, the "Senior Note Holders"), involves whether the 7.75% Convertible Notes are subordinated in right of payment to "post-petition interest" (*i.e.*, interest that accrues following the Petition Date through the date of emergence and/or thereafter) and certain other amounts arising under the Senior Notes, and whether the 7.75% Convertible Note Holders are required to pay over such amounts to the Senior Note Holders.

4.      Specifically, the governing Indenture provides that the 7.75% Convertible Notes are subordinated in right of payment to the prior payment in full of "all amounts (including principal, premium, if any, and interest)" due under "Senior Debt," as expressly defined therein to include the Senior Notes.  M&T concedes that the 7.75% Convertible Notes are subordinated in right of payment to any principal amount due under the Senior Notes as well as any "pre-petition interest" (*i.e.*, interest that accrued prior to the Petition Date but remained unpaid as of the Petition Date) arising under such Senior Notes.  Indeed, the Senior Note Holders have already been paid in full for all such amounts.

5.      However, consistent with binding precedent handed down by the New York Court of Appeals on the precise issue currently before this Court, the Indenture does *not* provide for the subordination of the 7.75% Convertible Notes with respect to any post-petition interest arising under Senior Debt.  The Court of Appeals has unequivocally adopted the "Rule of Explicitness" as a "guiding interpretive principle of State contract dispute resolution," such that "New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of the senior creditor's post-petition interest demand." *In re Southeast Banking Corp. (Chemical Bank v. First Trust of New York, N.A.)*, 93

3

N.Y.2d 178, 183-88 (1999).  In other words, under New York law, a senior creditor's claim for post-petition interest against a junior creditor will not be allowed unless the subordination agreement explicitly and unambiguously alerts the junior creditor to the risk of subordination with respect to post-petition interest.

6.      The Indenture here — virtually identical to that addressed by the New York Court of Appeals in *In re Southeast Banking Corp.* — falls well short of satisfying the Rule of Explicitness.  The Indenture fails to make any reference at all to the subordination of post-petition interest arising under Senior Debt, even though there are specific references to post-petition interest in other sections of the Indenture.

7.      Given the dispute as to the meaning and extent of the subordination provisions contained in the Indenture, Calpine's confirmed plan of reorganization provides that a portion of the 7.75% Convertible Note Holders' distribution will be held in escrow and released upon entry of a final determination from a court of competent jurisdiction as to the meaning of the subordination provisions.

8.      Accordingly, M&T respectfully seeks a judgment from this Court, as a "court of competent jurisdiction," declaring that the 7.75% Convertible Notes are *not* subordinated in right of payment to the prior payment in full of any post-petition interest arising under the Senior Notes (including any post-emergence date interest, whether at the contractual rate or otherwise).

9.      M&T also respectfully seeks a judgment from this Court declaring that the 7.75% Convertible Notes are *not* subordinated with respect to any "breach of contract damage claims" and/or fees and expenses asserted by the Senior Note Holders on similar grounds,

4

namely that the Indenture fails to explicitly and unambiguously provide that the 7.75%

Convertible Notes are subordinated to such claims, and on the grounds that any claims for breach

of contract damages (1) have been waived, and (2) do not constitute "premiums" for purposes of

the subordination provisions of the Indenture.

## **PARTIES**

10.     Plaintiff M&T is the successor indenture trustee for the 7.75% Convertible

Notes.  M&T is a New York banking corporation with an office located at 25 South Charles

Street, Baltimore, Maryland 21201.

11.     Defendant HSBC Bank USA, National Association is the successor

indenture trustee (solely in its capacity as such "HSBC") for each of the following series of

Senior Notes issued by Calpine:  (a) $102,194,000 of the 7.625% Senior Notes due 2006,

(b) $190,299,000 of the 8.75% Senior Notes due 2007, (c) $173,761,000 of the 7.875% Senior

Notes due 2008, and (d) $180,602,000 of the 7.75% Senior Notes due 2009.  HSBC is a national

banking association with an office located at 452 Fifth Avenue, New York, New York 10018.

12.     Defendant U.S. Bank National Association is the indenture trustee (solely

in its capacity as such, "USB," and together with HSBC, the "Senior  Notes Trustees") for the

$139,205,000 of 10.50% Senior Notes due 2006 issued by Calpine.[1]  USB is a national banking

association with an office located at 633 West 5th Street, Los Angeles, California 90071.

---

[1]     Upon information and belief, such amounts represent principal amounts outstanding (net of repurchases) as of
the Effective Date (as defined herein).

## FACTS

**I.      The 7.75% Convertible Notes:**

13.      On August 10, 2000, WTC and Calpine entered into the Base Indenture, a true and correct copy of which is annexed hereto as Exhibit A.  On June 23, 2005, Calpine and WTC entered into the Supplemental Indenture, a true and correct copy of which is annexed hereto as Exhibit B, which supplemented the terms of the Base Indenture as provided therein.

14.      Under the Supplemental Indenture, Calpine issued $650,000,000 in aggregate principal amount of 7.75% Convertible Notes.

15.      Pursuant to an order of the Bankruptcy Court, M&T succeeded to WTC as the indenture trustee for the 7.75% Convertible Notes.

16.      Section 10.11 of the Base Indenture provides that "[t]he laws of the State of New York govern this Indenture and the Securities, without regard to the conflicts of laws rules thereof."  Base Indenture, Ex. A § 10.11.  In addition, Section 12.07 of the Supplemental Indenture provides that "[t]his Third Supplemental Indenture and each Note shall be governed by and construed in accordance with the laws of the State of New York."  Supplemental Indenture, Ex. B, § 12.07.

**II.      Subordination Provisions of the Indenture:**

17.      The Supplemental Indenture provides that the 7.75% Convertible Notes are subordinated in right of payment to the prior payment in full in cash of Senior Debt "to the extent and in the manner" provided in Article XI of the Supplemental Indenture.  Supplemental Indenture, Ex. B, § 11.01(a).

6

18.     Section 11.03 of the Supplemental Indenture, which governs subordination with respect to distributions made as a result of a bankruptcy proceeding, provides, in relevant part, as follows:

> Upon any direct or indirect payment by or on behalf of [Calpine] or direct or indirect distribution of assets of [Calpine] of any kind or character, whether in cash, property or securities, by set-off or otherwise, to creditors upon any dissolution or winding up or liquidation or reorganization of [Calpine] or assignment for the benefit of creditors or marshaling of assets, whether voluntary or involuntary, or in bankruptcy, insolvency, receivership or other proceedings, *all amounts (including principal, premium, if any, and interest)* due or to become due upon all Senior Debt shall first be paid in full in cash, or such payment thereof provided for in money in accordance with its terms, before any payment or distribution is made on account of the principal (and premium, if any), interest or any other Obligation relating to the [7.75% Convertible] Notes[.]

Supplemental Indenture, Ex. B, § 11.03 (emphasis added).[2]

19.     The Supplemental Indenture defines "Senior Debt" as secured debt of Calpine as well as five issuances of Senior Notes issued by Calpine, but makes no mention of post-petition interest.  *See* Supplemental Indenture, Ex. B, § 1.01(b).

20.     The Supplemental Indenture makes no explicit reference *at all* to post-petition interest arising under the Senior Notes, either in the operative subordination provisions or in the definition of Senior Debt.

---

[2]     By way of instructive comparison, the indentures considered by the New York Court of Appeals in *In re Southeast Banking Corp.*, and found insufficient to satisfy the Rule of Explicitness, provided in relevant part that "[u]pon . . . any payment or distribution of assets of [Southeast] . . . in bankruptcy, *all principal, premium, if any, and interest* due or to become due upon all Senior Indebtedness shall first be paid in full . . . before any payment is made on account of the principal or, premium, if any, or interest on the Debentures . . . ."  93 N.Y.2d at 181 (emphasis added).

7

21.    Therefore, under the "Rule of Explicitness," which governs the interpretation of the Indenture here, the 7.75% Convertible Notes are *not* subordinated to post-petition interest arising under the Senior Notes.

## IV.    Certain Senior Note Holders' Breach of Contract Claims:

22.    For similar reasons, the 7.75% Convertible Notes are *not* subordinated in right of payment to the prior payment in full of breach of contract damages, either as asserted on behalf of a sub set of Senior Note Holders or as allowed by final order of the Bankruptcy Court.

23.    On September 19, 2007, Calpine filed its Motion for Approval of Stipulation with Calpine Unsecured Noteholders and HSBC Bank USA, N.A., as Indenture Trustee (the "HSBC Settlement Motion") with the Bankruptcy Court seeking approval of that certain Stipulation Resolving Objections by the Indenture Trustee for the Calpine Unsecured Notes and Calpine Unsecured Noteholders to Debtors' Motion for Entry of an Order Allowing Limited Objection to Claims and Determining Value of Claims dated September 19, 2007 (the "HSBC Stipulation").  A true and correct copy of the HSBC Settlement Motion, including the HSBC Stipulation attached thereto as an exhibit, is annexed hereto as Exhibit C.

24.    As described in the HSBC Settlement Motion, HSBC, on behalf of holders of two (2) series of Senior Notes, asserted general unsecured claims in the amount of approximately $7,300,000 for breach of contract damages against Calpine (the "Asserted Breach of Contract Claims") arising from Calpine's purported violation of the "no-call" provisions of the two series of Senior Notes (holders of such two (2) series of Senior Notes, together with HSBC, the "Settling Senior Note Holders").

8

25.     Pursuant to the HSBC Stipulation, as approved by order of the Bankruptcy Court dated October 10, 2007 (the "HSBC Order") (a true and correct copy of which is annexed hereto as Exhibit D), HSBC, on behalf of the Settling Senior Note Holders, was granted an allowed general unsecured claim in the total amount of $3,650,000 (the "Allowed Breach of Contract Claims") in satisfaction of and in exchange for the Asserted Breach of Contract Claims.

26.     Upon information and belief, shortly after the Effective Date (as defined below) and on or about February 1, 2008, HSBC received, on behalf of the Settling Senior Note Holders, a distribution directly from reorganized Calpine in the form of shares of New Calpine Common Stock representing approximately 84.8% of the Settling Senior Note Holders' Allowed Breach of Contract Claims.  Thus, upon information and belief, as of the date hereof, approximately $554,800 remains unpaid on account of the Settling Senior Note Holders' Allowed Breach of Contract Claims.

27.     The Settling Senior Note Holders have asserted that the 7.75% Convertible Notes are subordinated in right of payment to the unpaid balance of the Settling Senior Note Holders' Allowed Breach of Contract Claim.

28.     M&T disputes the Settling Senior Note Holders' assertions.

29.     The HSBC Stipulation and the HSBC Order provide that the Settling Senior Note Holders waived any rights of subordination under the Indenture with respect to their Asserted Breach of Contract Claims or Allowed Breach of Contract Claims.

30.     Specifically, paragraph 4 of the HSBC Order approving the HSBC Stipulation states as follows:

9

> The Calpine Unsecured Noteholders and HSBC, as successor indenture trustee on behalf of the Calpine Unsecured Notes, retain any and all rights that they now have or may hereafter have against other parties or property under or with respect to subordination provisions, including, but not limited to, those contained in the [7.75% Convertible Notes] issued by Calpine *other than with respect to the Unsecured Makewhole Claims*.

HSBC Settlement, Ex. D, at 8 (emphasis added).

31.     The term "Unsecured Makewhole Claims" is defined in the Settlement Motion as including "the makewhole premium and damages claims asserted by the holders of the Calpine Unsecured Notes and HSBC."  HSBC Settlement Motion, Ex. C, at p. 2.

**V**.     **Debtors' Plan of Reorganization:**

32.     Pursuant to the Debtors' Sixth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code dated December 19, 2007 (the "Plan") (a true and correct copy of which is annexed hereto as Exhibit E), as confirmed by order of the Bankruptcy Court, generally speaking, holders of allowed unsecured claims against Calpine will receive, in exchange for and in satisfaction of their claims, *pro rata* distributions of shares of common stock of reorganized Calpine ("New Calpine Common Stock") based on the imputed value of approximately $17.36 per share under the Plan.

33.     With respect to the treatment of the 7.75% Convertible Note Holders' claims under the 7.75% Convertible Notes, the Plan provides, in relevant part, that the claims of the 7.75% Convertible Note Holders are subordinated in right of payment to the extent necessary to satisfy in full that portion of the Senior Note Holders' claims attributable to principal and pre-petition interest.  *See* Plan, Ex. E, Art. III.B. ¶ 7, at 36-37.

34.     However, the Plan expressly provides that the extent to which the 7.75% Convertible Note Holders are subordinated with respect to any other amounts "shall be

10

determined by a court of competent jurisdiction" as part of the "Intercreditor Subordination Dispute," defined in the Plan as the dispute as to the scope of the subordination provisions contained in the Indenture as they relate to the claims of the Senior Note Holders.  Plan, Ex. E, Art. III.B. ¶ 7, at 36-37; Art.I.A. ¶¶ 151-153.

35.     As part of the Intercreditor Subordination Dispute, the Plan contemplates that the Debtors will establish an Intercreditor Subordination Dispute Escrow Account, defined in the Plan as an "escrow account established for the benefit of the Holders of Allowed Senior Note Claims and Allowed Subordinated Note Claims pending resolution of the Intercreditor Subordination Dispute by Final Order." *Id.*

36.     On January 31, 2008, Calpine issued the notice of the occurrence of the effective date of the Plan (the "Effective Date"), a true and correct copy of which is annexed hereto as Exhibit F.

37.     Also on January 31, 2008, Calpine issued a press release (the "Press Release"), a true and correct copy of which is annexed hereto as Exhibit G, wherein Calpine projected, based on the Debtors' litigation risk-adjusted analysis, that general unsecured creditors will recover approximately 84.8% on account of their allowed claims for principal, pre-petition interest and "makewhole" or breach of contract claims as part of an "initial distribution" to be made by reorganized Calpine soon after the Effective Date, and will ultimately recover approximately 99.9% on account of such claims.

38.     Upon information and belief, shortly after the Effective Date and on or about February 1, 2008, the Senior Notes Trustees received, on behalf of the Senior Note Holders, a distribution directly from reorganized Calpine in the form of shares of New Calpine

Common Stock representing approximately 84.8% of the Senior Note Holders' claims in the aggregate for principal, pre-petition interest and Allowed Breach of Contract Claims.

39.     Upon information and belief, shortly after the Effective Date and on or about February 1, 2008, a portion of the distribution that was otherwise distributable to M&T on behalf of the 7.75% Convertible Note Holders, equal to an amount necessary to satisfy in full the remaining 15.2% of the Senior Note Holders' claims for principal and pre-petition interest, was re-directed by reorganized Calpine and distributed to the Senior Notes Trustees for the benefit of the Senior Note Holders.

40.     The Senior Note Holders' claims for principal and pre-petition interest have been paid in full.

## V.    Subordination Dispute:

41.     On January 28, 2008, the Senior Notes Trustees sent a joint letter to counsel for M&T demanding that M&T consent to the deposit of shares of New Calpine Common Stock in the Intercreditor Subordination Dispute Escrow Account in an amount estimated by the Senior Notes Trustees to satisfy in full the Senior Notes Trustees' and the Senior Note Holders' asserted claims for (a) post-petition interest accruing at the contractual rate set forth in the Indenture, including interest on interest, (b) "post-emergence date" interest from the Effective Date through final resolution of the Intercreditor Subordination Dispute, (c) fees and expenses, and (d) certain amounts related to the Breach of Contract Claims.

42.     M&T disputes the Senior Note Holders' entitlement to any of the foregoing from the 7.75% Convertible Note Holders under the Indenture, the Plan or otherwise.

DB02:6663026.1                                                                065102.1003

43.    On January 30, 2008, counsel to the Senior Notes Trustees and counsel to M&T memorialized their agreement regarding the amount to be deposited into the Intercreditor Subordination Dispute Escrow Account.  *See* E-Mail correspondence, dated January 30, 2008, a copy of which is attached hereto as Exhibit H.

44.    Specifically, counsel to the Senior Notes Trustees agreed that shares of New Calpine Common Stock representing a total dollar value of $169,253,136.11 should be deposited into the Intercreditor Subordination Dispute Escrow Account.  *Id.*

45.    Upon information and belief, consistent with the foregoing, on or about February 1, 2008, the Debtors withheld 9,752,258 shares of New Calpine Common Stock from distributions otherwise distributable to M&T, on behalf of the 7.75% Convertible Noteholders, for deposit into the Intercreditor Subordination Dispute Escrow Account in connection with the Intercreditor Subordination Dispute.

## COUNT I – DECLARATORY RELIEF:  POST-PETITION INTEREST

46.    M&T repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth herein.

47.    By reason of the foregoing, an actual justiciable controversy exists among the parties as to whether, under the governing Indenture, the 7.75% Convertible Note Holders are subordinated in right of payment to the prior payment in full of the Senior Note Holders' post-petition interest.  Indeed, Calpine's Plan expressly recognizes the existence of such a controversy, and provides for the deposit of shares of New Calpine Common Stock subject to the

13

Intercreditor Subordination Dispute to be held in escrow pending a judicial declaration as to the respective rights of the parties.

48.     It is well-established law in the State of New York, based on binding precedent from the New York State Court of Appeals, that, in accordance with the Rule of Explicitness, a subordination agreement must include specific and explicit language that is sufficient to alert a junior creditor to its assumption of the risk and burden of allowing the payment of post-petition interest to a senior creditor.

49.     The subordination provisions of the Indenture do not specifically and explicitly state that the 7.75% Convertible Notes are subordinated in right of payment to the prior payment in full of any post-petition interest arising under the Senior Notes.

50.     In fact, no reference at all is made to post-petition interest in the subordination provisions of the Indenture.

51.     As a result, the 7.75% Convertible Note Holders are *not* subordinate to the payment of post-petition interest arising under the Senior Notes, and the 7.75% Convertible Note Holders are not required to pay over any portion of their distributions attributable to post-petition interest (including any post-Effective Date interest, whether at the contractual rate or otherwise) arising under the Senior Notes to the Senior Notes Trustees or the Senior Note Holders, under the Indenture, the Plan or otherwise.

52.     Accordingly, M&T respectfully seeks a judgment declaring that the 7.75% Convertible Notes are *not* subordinate to the payment of post-petition interest arising under the Senior Notes, and the 7.75% Convertible Note Holders are not required to pay over any portion of their initial or future distributions (whether currently held in or to be deposited into escrow, or

14

otherwise) attributable to post-petition interest (including any post-Effective Date interest, whether at the contractual rate or otherwise) arising under the Senior Notes to, or for the benefit of, the Senior Notes Trustees or the Senior Note Holders, under the Indenture, the Plan or otherwise.

## COUNT II – DECLARATORY RELIEF:  BREACH OF CONTRACT CLAIMS

53.     M&T repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length herein.

54.     By reason of the foregoing, an actual justiciable controversy exists among the parties as to whether, under the present circumstances and in accordance with the governing Indenture, the 7.75% Convertible Note Holders are subordinated in right of payment to the prior payment in full of any of the Settling Senior Note Holders' Asserted Breach of Contract Claims or Allowed Breach of Contract Claims.  Indeed, Calpine's Plan expressly recognizes the existence of such a controversy, and provides for the deposit of shares of New Calpine Common Stock subject to the Intercreditor Subordination Dispute to be held in escrow pending a judicial declaration as to the respective rights of the parties.

55.     The subordination provisions of the Indenture do not specifically and explicitly state that the 7.75% Convertible Notes are subordinated in right of payment to the prior payment in full of any Asserted Breach of Contract Claims asserted by the Settling Senior Note Holders or the Allowed Breach of Contract Claims.

56.     In fact, no reference at all is made to any such claims in the subordination provisions of the Indenture.

15

57.    Moreover, pursuant to the HSBC Stipulation and the HSBC Order, the Settling Senior Note Holders waived any right of subordination with respect to the Asserted Breach of Contract Claims, whether as originally asserted or as allowed by order of the Bankruptcy Court.

58.    In addition, the Asserted Breach of Contract Claims and/or the Allowed Breach of Contract Claims do not constitute "premiums" for purposes of the subordination provisions of the Indenture.

59.    As a result, the 7.75% Convertible Note Holders are not subordinate to the payment of Asserted Breach of Contract Claims or the Allowed Breach of Contract Claims arising under the Senior Notes, and the 7.75% Convertible Note Holders are not required to pay over any portion of their distributions attributable to such claims (including any interest that may accrue on account of such claims) to the Senior Notes Trustees or the Senior Note Holders, under the Indenture, the Plan or otherwise.

60.    Accordingly, M&T respectfully seeks a judgment declaring that the 7.75% Convertible Notes are not subordinate to the payment of the Settling Senior Note Holders' Asserted Breach of Contract Claims or Allowed Breach of Contract Claims, and the 7.75% Convertible Note Holders are not required to pay over any portion of their initial or future distributions (whether currently held in or to be deposited into escrow, or otherwise) attributable to such claims (including any interest that may accrue on account of such claims) to, or for the benefit of, the Settling Senior Note Holders, under the Indenture, the Plan or otherwise.

16

## COUNT III – DECLARATORY RELIEF:  FEES AND EXPENSES

61.     M&T repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length herein.

62.     By reason of the foregoing, an actual justiciable controversy exists among the parties as to whether, under the governing Indenture, the 7.75% Convertible Note Holders are subordinated in right of payment to the prior payment in full of any fees and expenses incurred by the Senior Notes Trustees or the Senior Note Holders.  Indeed, Calpine's Plan expressly recognizes the existence of such a controversy, and provides for the deposit of shares of New Calpine Common Stock subject to the Intercreditor Subordination Dispute to be held in escrow pending a judicial declaration as to the respective rights of the parties.

63.     The subordination provisions of the Indenture do not specifically and explicitly state that the 7.75% Convertible Note Holders are subordinate to the payment in full of any fees and expenses incurred by the Senior Notes Trustees or the Senior Note Holders.

64.     In fact, no reference at all is made to fees and expenses in section 11.03 of the Supplemental Indenture or the definition of Senior Debt.

65.     As a result, the 7.75% Convertible Note Holders are not subordinate to the payment of any fees and expenses arising under the Senior Notes, and the 7.75% Convertible Note Holders are not required to pay over any portion of their distributions attributable to such claims to the Senior Notes Trustees or the Senior Note Holders, under the Plan or otherwise.

66.     Accordingly, M&T respectfully seeks a judgment declaring that the 7.75% Convertible Notes are not subordinate to the payment of any fees and expenses incurred by the

17

Senior Notes Trustees or the Senior Notes Holders, and the 7.75% Convertible Note Holders are not required to pay over any portion of their initial or future distributions (whether currently held in or to be deposited into escrow, or otherwise) attributable to such claims (including any post-emergence date interest that may accrue on account of such claims) to, or for the benefit of, the Senior Notes Trustees or the Senior Note Holders, under the Indenture, the Plan or otherwise.

18

**WHEREFORE** M&T respectfully prays for relief against the Senior Notes Trustees as follows: (a) the entry of declaratory judgments in accordance with Counts I through III; (b) costs and disbursements of this action, including reasonable counsel fees and costs; and (c) such other and further relief as the Court deems just.

Dated: New York, New York
        February 21, 2008

Respectfully Submitted

STROOCK & STROOCK & LAVAN LLP


By: _____
    Kristopher M. Hansen
    Daniel A. Ross
    Erez E. Gilad
    180 Maiden Lane
    New York, New York  10038-4982
    Telephone:  (212) 806-5400
    Facsimile:  (212) 806-6006

Co-counsel to Manufacturers and Traders Trust Company, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation with respect to Counts I and II

YOUNG CONAWAY STARGATT & TAYLOR, LLP

    Rolin P. Bissell
    Norman M. Powell
    Ian S. Fredericks
    The Brandywine Building
    1000 West Street, 17th Floor
    P.O. Box 391
    Wilmington, Delaware  19899-0391
    Telephone:  (302) 571-6600
    Facsimile:  (302) 571-1253

Co-counsel to Manufacturers and Traders Trust Company, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation with respect to Counts I and II, and Counsel with respect to Count III

                                                    

Exhibits Omitted

20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

MANUFACTURERS AND TRADERS TRUST
COMPANY, as Successor Indenture Trustee for
the 7.75% Contingent Convertible Notes Due
2015 issued by Calpine Corporation,

       Plaintiff,

          -against-

HSBC Bank USA, National Association, as
Successor Indenture Trustee for the 7.625%
Senior Notes Due 2006, the 8.75% Senior Notes
Due 2007, the 8.75% Senior Notes Due 2008,
and the 7.75% Senior Notes Due 2009 issued by
Calpine Corporation,

         - and –

U.S. BANK NATIONAL ASSOCIATION, as
Indenture Trustee for the 10.50% Senior Notes
Due 2006 issued by Calpine Corporation,

       Defendants.

---

Index No: 08600534

**NOTICE OF FILING OF REMOVAL**

      **PLEASE TAKE NOTICE** that on March 26, 2008, Defendants HSBC Bank

USA, National Association ("HSBC") and U.S. Bank National Association ("U.S. Bank", and

together with HSBC, the "Defendants") filed a Notice of Removal in the above-captioned action

removing this action to the United States District Court for the Southern District of New York.

      **PLEASE TAKE FURTHER NOTICE** that Defendants, after filing the Notice

of Removal in the office of the Clerk of the United States District Court for the Southern District

of New York, also promptly filed copies thereof with the Clerk of the Supreme Court of the State

of New York, County of New York, to effect removal pursuant to 28 U.S.C. § 1446. A copy of

the Notice of Removal is annexed hereto as Exhibit A.

Please be advised that, pursuant to U.S.C. § 1446(d), the filing of such Notice of

Removal with the United States District Court for the Southern District of New York, together

with the filing of this notice with the Clerk of the Supreme Court of the State of New York,

County of New York, effects the removal of this action, and the Supreme Court of the State of

New York shall proceed no further unless and until the action is remanded.

Dated: New York, New York
     March 26, 2008

KELLEY DRYE & WARREN LLP

By: _Sarah Reid_

    Sarah L. Reid
    Alison L. MacGregor
    101 Park Avenue
    New York, New York 10178
    Telephone: (212) 808-7800
    Facsimile: (212) 808-7897

    Attorneys for Defendant
    HSBC Bank USA, National Association

SHIPMAN & GOODWIN LLP

By: _Brian Damiano_

    Ira H. Goldman
    Marie C. Pollio
    One Constitution Plaza
    Hartford, Connecticut 06103
    Telephone: (860) 251-5000
    Facsimile: (860) 251-5214

    Brian Damiano
    DUANE MORRIS LLP
    1540 Broadway
    New York, New York 10036
    Telephone: (212) 692-1000
    Facsimile: (212) 202-4717

    Attorneys for Defendant
    U.S. Bank National Association

EXHIBIT A

Sarah L. Reid
Alison L. MacGregor
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Attorneys for Defendant HSBC Bank USA,
National Association*

Ira H. Goldman
Marie C. Pollio
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, Connecticut 06103
(860) 251-5000

Brian Damiano
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 202-5000

*Attorneys for Defendant U.S. Bank National Association*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANUFACTURERS AND TRADERS
TRUST COMPANY, as Successor Indenture
Trustee for the 7.75% Contingent Convertible
Notes Due 2015 issued by Calpine
Corporation,

Plaintiff,

-against-

HSBC BANK USA, National Association, as
Successor Indenture Trustee for the 7.625%
Senior Notes Due 2006, the 8.75% Senior
Notes Due 2007, the 8.75% Senior Notes Due
2008, and the 7.75% Senior Notes Due 2009
issued by Calpine Corporation,

- and –

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee for the 10.50% Senior
Notes Due 2006 issued by Calpine
Corporation,

Defendants.

ECF Case
CASE NO.08·3093(VM)

**NOTICE OF REMOVAL**

Defendants HSBC Bank USA, National Association ("HSBC") and U.S. Bank National Association ("U.S. Bank", and together with HSBC, the "Defendants"), hereby notice the removal of the above-captioned action pursuant to 28 U.S.C. § 1441 *et seq.*, and respectfully states as follows:

1.      Plaintiff Manufacturers and Traders Trust Company ("M&T" or "Plaintiff") filed the above-captioned action, *Manufacturers and Traders Trust Company v. HSBC Bank USA, National Association, and U.S. Bank National Association*, Index No. 08600534, now pending in the Supreme Court of the State of New York, County of New York, on February 21, 2008 (the "State Court Action").

2.      HSBC was served with the Summons and Complaint in the State Court Action on March 11, 2008.  U.S. Bank was served with the Summons and Complaint in the State Court Action on or about March 11, 2008.  True and correct copies of the Summons and Complaint are annexed hereto as Exhibit A.

3.      The Complaint constituted the initial pleading for purposes of removal under 28 U.S.C. § 1446(b) as it provided the necessary facts to support this removal petition. Removal is thus timely under 28 U.S.C. § 1446(b) because Defendants have filed this petition within thirty days of service and receipt of the Summons and Complaint.

4.      The Summons and Complaint constitute all of the processes, pleadings, and orders filed or served in the State Court Action.

5.      Defendants have not yet answered or appeared in the State Court Action.

6.      The State Court Action is a civil suit for declaratory relief brought by M&T, as indenture trustee, on behalf of holders of subordinated debt of Calpine Corporation ("Calpine") against HSBC and U.S. Bank, as indenture trustees, on behalf of holders of senior

debt of Calpine Corporation, concerning the senior holders' claims that they are entitled to post petition interest.  M&T seeks declaratory relief that (1) the holders of senior notes are not entitled to post petition interest under the relevant indentures; (2) that certain of the holders of senior notes waived rights of subordination with respect to certain breach of contract claims asserted governed by a settlement; and (3) that the holders of subordinated notes are not subordinated to the payment of fees and expenses incurred by or on behalf of the senior holders.

7.      This action involves a controversy between citizens of different states, in that:  (a) Plaintiff M&T is now, and was at the time the action was commenced, a "New York banking corporation" (Complaint ¶ 10) incorporated in the State of New York, with, upon information and belief, a principal place of business at One M&T Plaza, Buffalo, New York 14203; (b) Defendant HSBC is now, and was at the time the action was commenced, a national banking association with its main office, as set forth in its articles of association, in Wilmington, Delaware; and (c) Defendant U.S. Bank is now, and was at the time the action was commenced, a national banking association with its main office, as set forth in its articles of association, in Cincinnati, Ohio.

8.      Accordingly, the citizenship of the parties is completely diverse.

9.      By reason of the foregoing, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) and the action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, Defendants HSBC and U.S. Bank pray that the above-captioned action is removed, with the express reservation of all procedural and substantive defenses, from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated: New York, New York
       March 26, 2008

                          KELLEY DRYE & WARREN LLP


                          By: _____
                               Sarah L. Reid
                               Alison L. MacGregor
                               101 Park Avenue
                               New York, New York 10178
                               Telephone:  (212) 808-7800
                               Facsimile:  (212) 808-7897

                               Attorneys for Defendant
                               HSBC Bank USA, National Association

                          SHIPMAN & GOODWIN LLP


                          By: _____
                               Ira H. Goldman
                               Marie C. Pollio
                               One Constitution Plaza
                               Hartford, Connecticut 06103
                               Telephone:  (860) 251-5000
                               Facsimile:  (860) 251-5214

                               Brian Damiano
                               DUANE MORRIS LLP
                               1540 Broadway
                               New York, New York 10036
                               Telephone:  (212) 692-1000
                               Facsimile:  (212) 202-4717


                               Attorneys for Defendant
                               U.S. Bank National Association

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | | |
|---|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation | ) ) ) ) ) | IMAGED |
| Plaintiff, | ) ) | |
| - against - | ) ) | 08000534 |
| HSBC BANK USA, National Association, as Successor Indenture Trustee for the 7.625% Senior Notes Due 2006, the 8.75% Senior Notes Due 2007, the 8.75% Senior Notes Due 2008, and the 7.75% Senior Notes Due 2009 issued by Calpine Corporation, | ) ) ) ) ) ) ) ) | **SUMMONS**<br>Index No. _____<br>Plaintiff designates New York County as the place for trial. The basis for venue is CPLR § 503(c). |
| - and - | ) ) | |
| U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for the 10.50% Senior Notes Due 2006 issued by Calpine Corporation | ) ) ) ) ) |  |
| Defendants. | ) ) | |

To The Above-Named Defendant:


You are hereby summoned and required to serve upon Plaintiff's attorney an answer to

the complaint in this action within twenty (20) days after the date of service of this Summons

upon you, exclusive of the day of service, or within thirty (30) days after the date of service is

complete if this Summons is not personally delivered to you within the State of New York. In

the case of your failure to answer, judgment will be taken against you by default for the relief

demanded in the annexed complaint.

Dated:  New York, New York
        February 21, 2008

STROOCK & STROOCK & LAVAN LLP

By: _____
    Kristopher M. Hansen
    Daniel A. Ross
    Erez E. Gilad
    180 Maiden Lane
    New York, New York 10038
    212-806-5400

    YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
    Pauline K. Morgan, Esq.
    Ian S. Fredericks, Esq.
    The Brandywine Building
    1000 West Street, 17th Floor
    P.O. Box 391
    Wilmington, Delaware  19899-0391
    302-571-6600
    *Attorneys for Plaintiff Manufacturers
    and Traders Trust Company, as
    Successor Indenture Trustee for the
    7.75% Convertible Notes Due 2015
    issued by Calpine Corporation*

HSBC Bank USA, National
Association
452 Fifth Avenue
New York, New York 10018

U.S. Bank National Association
633 West 5th Street
Los Angeles, California 90071

2

Exhibits C-G submitted on ECF are extracts from the full exhibits

CALPINE CANADA ENERGY FINANCE ULC

and

WILMINGTON TRUST COMPANY, Trustee

Indenture

Dated as of April 25, 2001

Debt Securities

Fully and Unconditionally Guaranteed
by Calpine Corporation

NY: 256209-1

# TABLE OF CONTENTS

**PAGE**

## ARTICLE I
### DEFINITIONS AND INCORPORATION BY REFERENCE

| | | |
|---|---|---|
| SECTION 1.1 | Definitions | 1 |
| SECTION 1.2 | Other Definitions | 6 |
| SECTION 1.3 | Incorporation by Reference of TIA | 6 |
| SECTION 1.4 | Rules of Construction | 6 |

## ARTICLE II
### THE SECURITIES

| | | |
|---|---|---|
| SECTION 2.1 | Securities Issuable in Series | 7 |
| SECTION 2.2 | Form and Dating | 8 |
| SECTION 2.3 | Execution and Authentication | 9 |
| SECTION 2.4 | Registrar and Paying Agent | 9 |
| SECTION 2.5 | Paying Agent To Hold Money in Trust | 10 |
| SECTION 2.6 | Securityholder Lists | 10 |
| SECTION 2.7 | Transfer and Exchange | 10 |
| SECTION 2.8 | Replacement Securities | 11 |
| SECTION 2.9 | Outstanding Securities | 12 |
| SECTION 2.10 | Determination of Holders' Action | 12 |
| SECTION 2.11 | Temporary Securities | 12 |
| SECTION 2.12 | Cancellation | 12 |
| SECTION 2.13 | Defaulted Interest | 13 |
| SECTION 2.14 | Interest Act (Canada) | 13 |

## ARTICLE III
### COVENANTS

| | | |
|---|---|---|
| SECTION 3.1 | Payment of Securities | 13 |
| SECTION 3.2 | Maintenance of Office or Agency | 13 |
| SECTION 3.3 | Limitation on Sale/Leaseback Transactions | 13 |
| SECTION 3.4 | Limitation on Liens | 14 |
| SECTION 3.5 | Compliance Certificate | 15 |
| SECTION 3.6 | Further Instruments and Acts | 15 |
| SECTION 3.7 | Waiver of Certain Covenants | 15 |

## ARTICLE IV
### CONSOLIDATION, MERGER, SALE AND LEASE

| | | |
|---|---|---|
| SECTION 4.1 | Merger and Consolidation of Company | 15 |
| SECTION 4.2 | Successor Substituted | 16 |
| SECTION 4.3 | Assignment by the Company to the Guarantor or its Significant Subsidiaries | 16 |

## ARTICLE V
### DEFAULTS AND REMEDIES

| | | |
|---|---|---|
| SECTION 5.1 | Events of Default | 16 |
| SECTION 5.2 | Acceleration | 18 |
| SECTION 5.3 | Other Remedies | 18 |
| SECTION 5.4 | Waiver of Past Defaults | 18 |
| SECTION 5.5 | Control by Majority | 18 |
| SECTION 5.6 | Limitation on Suits | 18 |
| SECTION 5.7 | Rights of Holders To Receive Payment | 19 |
| SECTION 5.8 | Collection Suit by Trustee | 19 |

|  |  | PAGE |
|---|---|---|
| SECTION 5.9 | Trustee May File Proofs of Claim | 19 |
| SECTION 5.10 | Priorities | 20 |
| SECTION 5.11 | Undertaking for Costs | 20 |
| SECTION 5.12 | Waiver of Stay or Extension Laws | 20 |

**ARTICLE VI**
**TRUSTEE**

| SECTION 6.1 | Duties of Trustee | 20 |
|---|---|---|
| SECTION 6.2 | Rights of Trustee | 21 |
| SECTION 6.3 | Individual Rights of Trustee | 22 |
| SECTION 6.4 | Trustee's Disclaimer | 22 |
| SECTION 6.5 | Notice of Defaults | 22 |
| SECTION 6.6 | Reports by Trustee to Holders | 22 |
| SECTION 6.7 | Compensation and Indemnity | 22 |
| SECTION 6.8 | Replacement of Trustee | 23 |
| SECTION 6.9 | Successor Trustee by Merger, etc. | 24 |
| SECTION 6.10 | Eligibility; Disqualification; Conflicting Interests | 24 |
| SECTION 6.11 | Preferential Collection of Claims Against Company | 24 |

**ARTICLE VII**
**SATISFACTION AND DISCHARGE OF INDENTURE**

| SECTION 7.1 | Discharge of Liability on Securities | 24 |
|---|---|---|
| SECTION 7.2 | Termination of Company's Obligations | 25 |
| SECTION 7.3 | Defeasance and Discharge of Indenture | 25 |
| SECTION 7.4 | Defeasance of Certain Obligations | 27 |
| SECTION 7.5 | Application of Trust Money | 28 |
| SECTION 7.6 | Repayment to Company | 28 |
| SECTION 7.7 | Reinstatement | 28 |
| SECTION 7.8 | Deposited Money and U.S. Government Obligations to be Held in Trust; Miscellaneous Provisions | 28 |

**ARTICLE VIII**
**AMENDMENTS AND SUPPLEMENTS**

| SECTION 8.1 | Without Consent of Holders | 28 |
|---|---|---|
| SECTION 8.2 | With Consent of Holders | 29 |
| SECTION 8.3 | Compliance with Trust Indenture Act | 30 |
| SECTION 8.4 | Revocation and Effect of Consents | 30 |
| SECTION 8.5 | Notation on or Exchange of Securities | 30 |
| SECTION 8.6 | Trustee To Sign Amendments | 30 |
| SECTION 8.7 | Fixing of Record Dates | 30 |

**ARTICLE IX**
**REDEMPTION**

| SECTION 9.1 | Applicability of Article | 30 |
|---|---|---|
| SECTION 9.2 | Election to Redeem; Notice to Trustee | 31 |
| SECTION 9.3 | Selection by Trustee of Securities to be Redeemed | 31 |
| SECTION 9.4 | Notice of Redemption | 31 |
| SECTION 9.5 | Deposit of Redemption Price | 31 |
| SECTION 9.6 | Securities Redeemed in Part | 32 |

**ARTICLE X**
**MISCELLANEOUS**

| SECTION 10.1 | Trust Indenture Act Controls | 32 |
|---|---|---|
| SECTION 10.2 | Notices | 32 |

| | | PAGE |
|---|---|---|
| SECTION 10.3 | Communication by Holders with Other Holders | 33 |
| SECTION 10.4 | Certificate and Opinion as to Conditions Precedent | 33 |
| SECTION 10.5 | Statements Required in Certificate or Opinion | 33 |
| SECTION 10.6 | Rules by Trustee and Agents | 33 |
| SECTION 10.7 | Legal Holidays | 33 |
| SECTION 10.8 | Successors: No Recourse Against Others | 34 |
| SECTION 10.9 | Duplicate Originals | 34 |
| SECTION 10.10 | Other Provisions | 34 |
| SECTION 10.11 | Governing Law | 34 |
| SECTION 10.12 | Jurisdiction | 34 |
| SECTION 10.13 | Judgement Currency | 34 |
| SIGNATURES | | |
| EXHIBIT A -- Form of Security | | A-1 |

INDENTURE, dated as of April 25, 2001, between Calpine Canada Energy Finance ULC, an unlimited liability company organized under the laws of Nova Scotia, Canada (the "Company"), and Wilmington Trust Company, a Delaware banking corporation (the "Trustee").

WHEREAS, the Company desires to issue debt securities in one or more series from time to time hereunder in an unlimited aggregate principal amount;

WHEREAS, Calpine Corporation, the parent corporation of the Company, has agreed to fully and unconditionally guarantee the debt securities issued by the Company hereunder; and

WHEREAS, the Trustee desires to act as Trustee with respect to such securities;

NOW, THEREFORE, each party agrees as follows for the benefit of the other parties and for the equal and ratable benefit of the holders of such securities or of series thereof:

## ARTICLE I

### DEFINITIONS AND INCORPORATION BY REFERENCE

SECTION 1.1 Definitions.

"Affiliate" of any specified Person means any other Person, directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control", when used with respect to any Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agent" means, with respect to any Series of Securities, any Registrar, Paying Agent, authenticating agent, co-registrar or additional paying agent appointed pursuant to this Indenture with respect to such Series.

"Attributable Debt" in respect of a Sale/Leaseback Transaction means, as at the time of determination, the present value (discounted at the rate of interest set forth or implicit in the terms of such lease (or, if not practicable to determine such rate, the weighted average rate of interest borne by the Securities outstanding hereunder (calculated, in the event of the issuance of any original issue discount Securities, based on the imputed interest rate with respect thereto)), compounded annually) of the total obligations of the lessee for rental payments during the remaining term of the lease included in such Sale/Leaseback Transaction (including any period for which such lease has been extended).

"Average Life" means, as of the date of determination, with respect to any Indebtedness or Preferred Stock, the quotient obtained by dividing (i) the sum of the products of (A) the numbers of years from the date of determination to the dates of each successive scheduled principal payment of such Indebtedness or scheduled redemption or similar payment with respect to such Indebtedness or Preferred Stock multiplied by (B) the amount of such payment by (ii) the sum of all such payments.

"Board of Directors" means the Board of Directors of the Company or any authorized committee thereof.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Business Day" means each day which is not a Legal Holiday.

"Capital Stock" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation or any and all equivalent ownership interests in a Person (other than a corporation).

"Capitalized Lease Obligations" of any Person means the rental obligations under any lease of any property (whether real, personal or mixed) of which the discounted present value of the rental obligations of such Person as lessee, in conformity with GAAP, is required to be capitalized on the balance sheet of such Person; the Stated Maturity of any such lease shall be the date of the last

NY: 256209-1

shall be deemed to have occurred as a consequence thereof, as long as the requirements of paragraphs (i) and (iii) are satisfied in connection therewith.

SECTION 4.2 Successor Substituted.

(a) Upon any such consolidation, merger or amalgamation, or any sale, assignment, conveyance, transfer, disposition or lease of all or substantially all of the properties or assets of the Company in accordance with Section 4.1, the Successor Corporation shall succeed to and be substituted for the Company under this Indenture and each Series of Securities, and the Company shall (except in the case of a lease) thereupon be released from all obligations hereunder and under each Series of Securities and the Company, as the predecessor corporation, may thereupon or at any time thereafter be dissolved, wound up or liquidated.

(b) In the case of any consolidation, merger, amalgamation or sale, assignment, conveyance, transfer, disposition or lease described in Section 4.2(a) above, such changes in form (but not in substance) may be made in the Securities thereafter to be issued as may be appropriate.

SECTION 4.3 Assignment by the Company to the Guarantor or its Significant Subsidiaries.

(a) The Company may assign its obligations under any series of Securities to the Guarantor or any Significant Subsidiary of the Guarantor (the "Affiliate Assignee") and such Affiliate Assignee shall be treated as the successor to the Company with respect to such series of Securities; provided that: (i) the Affiliate Assignee expressly assumes in an assumption agreement or supplemental indenture hereto, executed and delivered to the Trustee, the due and punctual payment of the principal of and any premium and interest on such Securities and the performance or observance of every covenant of this Indenture on the part of the Company to be performed or observed with respect to such Series; (ii) immediately after giving effect to such assignment and assumption, no Event of Default with respect to such Series and no event which, after notice or lapse of time or both, would become an Event of Default with respect to such Series, shall have occurred and be continuing; (iii) the Affiliate Assignee shall deliver to the Trustee an opinion of an independent counsel or a tax consultant of recognized standing that the Holders will not recognize income, gain or loss for United States federal income tax purposes as a result of such assignment and assumption; and (iv) the Affiliate Assignee shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel stating that such assignment and assumption and such assumption agreement comply with this Article and that all conditions precedent herein provided for relating to such assignment and assumption have been complied with.

(b) Upon any assignment and assumption of Securities pursuant to Section 4.3(a) above, the Affiliate Assignee shall succeed to, and be substituted for, and may exercise every right and power of, the Company under such Securities and this Indenture with respect to such Series with the same effect as if the Affiliate Assignee has been named as the Company herein, and the Company shall be released from its liability as obligor upon such Securities and under this Indenture with respect to such Securities and, if the Affiliate Assignee is the Guarantor and the Guarantor has assumed the obligations of the Company under an outstanding series of Securities and the Indenture with respect to such Securities in accordance with (a) above, all outstanding Guarantees of such series of Securities shall automatically terminate and be discharged.

ARTICLE V

DEFAULTS AND REMEDIES

SECTION 5.1 Events of Default.

An "Event of Default" means, with respect to any Series of Securities, any of the following events:

(a) default in the payment of interest on any Security of such Series when the same becomes due and payable, and such default continues for a period of 30 days;

(b) default in the payment of the principal of any Security of such Series when the same becomes due and payable at maturity or otherwise;

(c) material default in performance of any other covenants or agreements of the Company in the Securities of such Series or this Indenture or of the Guarantor in the Guarantee Agreement with respect to such Series and the default continues for 30 days after the date on which written notice of such default is given to the Company or the Guarantor, as the case may be, by the Trustee or to the

16

Company or the Guarantor, as the case may be, and the Trustee by Holders of at least 25% in principal amount of the Securities of such Series then outstanding hereunder;

(d) there shall have occurred either (i) a default by either of the Company or the Guarantor under any instrument or instruments under which there is or may be secured or evidenced any Indebtedness of the Company or the Guarantor, as applicable (other than the Securities of such Series) having an outstanding principal amount of $50,000,000 (or its foreign currency equivalent) or more individually or in the aggregate that has caused the holders thereof to declare such Indebtedness to be due and payable prior to its Stated Maturity, unless such declaration has been rescinded within 30 days or (ii) a default by either of the Company or the Guarantor in the payment when due of any portion of the principal under any such instrument or instruments, and such unpaid portion exceeds $50,000,000 (or its foreign currency equivalent) individually or in the aggregate and is not paid, or such default is not cured or waived, within any grace period applicable thereto, unless such Indebtedness is discharged within 30 days of the Company or the Guarantor, as applicable becoming aware of such default;

(e) the Guarantee shall be held in a judicial proceeding to be unenforceable or ceases for any reason to be in full force and effect (other than in accordance with the terms hereof or of the Guarantee) or the Guarantor denies or disaffirms in writing its obligations under the Guarantee with respect to such Series.

(f) the Company or the Guarantor or any Significant Subsidiary pursuant to or within the meaning of any Bankruptcy Law:

(i) commences a voluntary case;

(ii) consents to the entry of an order for relief against it in an involuntary case;

(iii) consents to the appointment of a Custodian of it or for all or substantially all of its property;

(iv) makes a general assignment for the benefit of its creditors; or

(v) admits in writing its inability to generally pay its debts as such debts become due;or takes any comparable action under any foreign laws relating to insolvency; or

(g) a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(i) is for relief against the Company or the Guarantor or any Significant Subsidiary in an involuntary case;

(ii) appoints a Custodian of the Company or the Guarantor or any Significant Subsidiary or for all or substantially all of its property; or

(iii) orders the winding up or liquidation of the Company or the Guarantor or any Significant Subsidiary;

or any similar relief is granted under any foreign laws; and the order or decree remains unstayed and in effect for 60 days.

The term "Bankruptcy Law" means Title 11 of the United States Code or any similar Federal or State law or Canadian federal, provincial or territorial law for the relief of debtors. The term "Custodian" means any receiver, trustee, assignee, liquidator or similar official under any Bankruptcy Law.

Any notice of Default given by the Trustee or Securityholders under this Section must specify the Default, demand that it be remedied and state that the notice is a "Notice of Default."

The Company shall deliver to the Trustee, within 30 days after the occurrence thereof, written notice of any event which with the giving of notice or the lapse of time or both would become an Event of Default under clause (d), (e), (f) or (g) hereof.

Subject to the provisions of Section 6.1 and 6.2, the Trustee shall not be deemed to have notice or be charged with knowledge of any Default or Event of Default unless written notice thereof shall have been given to the Trustee in accordance with Section 10.2 by the Company, the Paying Agent, any Holder or an agent of any Holder and such notice references the Securities and this Indenture.

SECTION 5.2  Acceleration.

If an Event of Default (other than an Event of Default specified in clause (f) and (g) of Section 5.1 with respect to the Company) occurs and is continuing with respect to the Securities of any Series, the Trustee by notice to the Company, or the Holders of at least 25% in principal amount of the Securities of such Series by notice to the Company and the Trustee, may declare the principal of and accrued and unpaid interest on all the Securities of such Series to be due and payable. Upon such declaration the principal and interest shall be due and payable immediately. If an Event of Default specified in clause (f) or (g) of Section 5.1 with respect to the Company occurs, the principal of and interest on all the Securities of each Series shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Securityholders. An acceleration and its consequences in respect of a Series of Securities shall be automatically annulled and rescinded; provided, however, that such annulment and rescission would not conflict with any judgment or decree and if all existing Events of Default with respect to such Series have been cured or waived except nonpayment of principal or interest that has become due solely because of the acceleration. No such rescission shall affect any subsequent or other Default or Event of Default or impair any consequent right.

SECTION 5.3  Other Remedies.

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal or interest on the relevant Securities or to enforce the performance of any provision of such Securities, this Indenture or the Guarantee Agreement.

The Trustee may maintain a proceeding even if it does not possess any of the Securities or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Securityholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

SECTION 5.4  Waiver of Past Defaults.

The Holders of a majority in principal amount of a Series of Securities by notice to the Trustee may waive an existing Default and its consequences with respect to such Series, except (a) a Default in the payment of the principal of or interest on any Security of such Series or (b) a Default in respect of a provision that under Section 8.2 cannot be amended without the consent of each affected Securityholder of such Series. When a Default is waived, it is deemed cured, but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any consequent right.

SECTION 5.5  Control by Majority.

The Holders of a majority in principal amount of the Securities of a Series may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it with respect to the Securities or Guarantee of such Series. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture or the Guarantee Agreement, or, subject to Section 6.1, that the Trustee determines is unduly prejudicial to the rights of other Securityholders, or would involve the Trustee in personal liability; provided, however, that the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction. Prior to taking any action hereunder, the Trustee shall be entitled to indemnification from Securityholders of such Series reasonably satisfactory to it against all risk, losses and expenses caused by taking or not taking such action. Subject to Section 6.1, the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of the Securityholders pursuant to this Indenture, unless such Securityholders shall have provided to the Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which might be incurred in compliance with such request or direction.

SECTION 5.6  Limitation on Suits.

A Securityholder of a Series may pursue a remedy with respect to this Indenture, the Guarantee Agreement or the Securities of such Series only if:

(a) the Holder gives to the Trustee written notice of a continuing Event of Default with respect to that Series;

(b) the Holders of at least 25% in principal amount of the Securities of such Series make a written request to the Trustee to pursue the remedy;

(c) such Holder or Holders offer to the Trustee security or indemnity reasonably satisfactory to it against any loss, liability or expense;

(d) the Trustee does not comply with the request within 60 days after receipt of the notice, request and the offer of security or indemnity; and

(e) the Holders of a majority in principal amount of the Securities of such Series do not give the Trustee a direction inconsistent with the request during such 60-day period.

A Securityholder may not use this Indenture or the Guarantee Agreement to prejudice the rights of another Securityholder or to obtain a preference or priority over another Securityholder.

SECTION 5.7  Rights of Holders To Receive Payment.

Notwithstanding any other provision of this Indenture or the Guarantee Agreement, the right of any Holder of a Security to receive payment of principal and interest on the Security, on or after the respective due dates expressed or provided for in the Security, or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of the Holder..

SECTION 5.8  Collection Suit by Trustee.

If an Event of Default specified in Section 5.1(a) or (b) occurs and is continuing with respect to a Security, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company, the Guarantor or any other obligor on such Security for the whole amount of principal and interest remaining unpaid (together with interest on such unpaid interest to the extent lawful) and the amounts provided for in Section 6.7.

SECTION 5.9  Trustee May File Proofs of Claim.

The Trustee may file such proofs of claim and other papers or documents and take such other actions including participating as a member or otherwise in any committees of creditors appointed in the matter as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the amounts provided in Section 6.7) and the Securityholders allowed in any judicial proceedings relative to the Company, the Guarantor or the creditors or the property of the Company or the Guarantor and, unless prohibited by law or applicable regulations, may vote on behalf of the Holders of each Series in any election of a trustee in bankruptcy or other Person performing similar functions, and any Custodian in any such judicial proceeding is hereby authorized by each Holder to make payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and its counsel, and any other amounts due the Trustee under Section 6.7. To the extent that the payment of any such amount due to the Trustee under Section 6.7 out of the estate in any such proceeding shall be denied for any reason, payment of the same shall be secured by a Lien on, and shall be paid out of, any and all distributions, dividends, money, securities and other properties which the Holders of the Securities may be entitled to receive in such proceeding whether in liquidation or under any plan of reorganization or arrangement or otherwise.

No provision of this Indenture shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities, the Guarantee or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding; provided, however, that the Trustee may, on behalf of the Holders, vote for the election of a trustee in bankruptcy or similar official and be a member of a creditors' or other similar committee.

SECTION 5.10 Priorities.

If the Trustee collects any money or other consideration pursuant to this Article, it shall pay out the money or other consideration in the following order:

First: to the Trustee for amounts due under Section 6.7;

Second: to Securityholders for amounts due and unpaid on the Securities of the relevant Series for principal and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Securities of such Series for principal and interest, respectively; and

Third: to the Company.

The Trustee may fix a record date and payment date for any payment to Securityholders of such Series pursuant to this Section. At least 15 days before such record date, the Company shall give written notice to each Securityholder of such Series and the Trustee of the record date, the payment date and amount to be paid.

SECTION 5.11 Undertaking for Costs.

In any suit for the enforcement of any right or remedy under this Indenture or the Guarantee Agreement or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 5.7, or a suit by Holders of more than 10% in principal amount of the Securities of any Series.

SECTION 5.12 Waiver of Stay or Extension Laws.

The Company shall not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and the Company hereby expressly waives all benefit or advantage of any such law, and shall not hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

## ARTICLE VI

## TRUSTEE

SECTION 6.1 Duties of Trustee.

(a) If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture and the Guarantee Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

(b) Except during the continuance of an Event of Default:

(i) The Trustee need perform only those duties that are specifically set forth in this Indenture or the Guarantee Agreement and no others and no implied covenants or obligations shall be read into this Indenture or the Guarantee Agreement against the Trustee.

(ii) In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture or the Guarantee Agreement. However, the Trustee shall examine the certificates and opinions to determine whether or not they conform to the requirements of this Indenture or the Guarantee Agreement, as the case may be (but need not confirm or investigate the accuracy of mathematical calculations or other facts stated therein).

20

(c) The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i) This paragraph does not limit the effect of paragraph (b) of this Section.

(ii) The Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts.

(iii) The Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 5.2, 5.4 or 5.5.

(iv) No provision of this Indenture or the Guarantee Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, unless it receives indemnity satisfactory to it against any risk, loss, liability or expense.

(d) Every provision of this Indenture that in any way relates to the Trustee is subject to paragraphs (a), (b) and (c) of this Section.

(e) The Trustee, in its capacity as Trustee and Registrar and Paying Agent, shall not be liable to the Company, the Guarantor, the Securityholders or any other Person for interest on any money received by it, including, but not limited to, money with respect to principal of or interest on the Securities of any Series, except as the Trustee may agree with the Company.

(f) Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

SECTION 6.2 Rights of Trustee.

(a) The Trustee may rely on any document reasonably believed by it to be genuine and to have been signed or presented by the proper Person. The Trustee need not investigate any fact or matter stated in the document.

(b) Before the Trustee acts or refrains from acting, it may require an Officers' Certificate, an Opinion of Counsel or both covering such matters as it shall reasonably determine. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on any such Officers' Certificate or Opinion of Counsel.

(c) The Trustee may act through agents and shall not be responsible for the misconduct or negligence of any agent appointed with due care.

(d) The Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers provided, however, that the Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

(e) The Trustee may consult with counsel of its selection, and the advice or opinion of such counsel as to matters of law shall be full and complete authorization and protection from liability in respect of any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice of such counsel.

(f) The Trustee shall not be obligated to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture or any other paper or document.

(g) The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture or the Guarantee Agreement at the request or direction of any of the Holders pursuant to this Indenture, unless such Holders shall have offered to the Trustee security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction.

(h) The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and to each agent, custodian and other Person employed to act hereunder.

21

SECTION 6.3 Individual Rights of Trustee.

The Trustee in its individual or any other capacity may become the owner or pledgee of Securities and may otherwise deal with the Company, the Guarantor or an Affiliate of the Company with the same rights it would have if it were not Trustee. Any Agent may do the same with like rights. However, the Trustee is subject to Sections 6.10 and 6.11.

SECTION 6.4 Trustee's Disclaimer.

The Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture or the Securities of any Series, it shall not be accountable for the Company's use of the proceeds from the Securities of any Series, and it shall not be responsible for any recital or statement in this Indenture or the Securities of any Series other than its authentication. The Trustee shall have no duty to ascertain or inquire as to the performance of the Company's covenants in Article III hereof.

SECTION 6.5 Notice of Defaults.

If a Default or an Event of Default occurs and is continuing and if it is actually known to a Trust Officer of the Trustee, the Trustee shall mail to Securityholders of the affected Series a notice of the Default or Event of Default within 90 days after a Trust Officer of the Trustee has actual knowledge of the occurrence thereof. Except in the case of a Default in any payment on any Security, the Trustee may withhold the notice if and so long as a committee of its Trust Officers in good faith determines that withholding the notice is in the interests of Securityholders of the affected Series.

SECTION 6.6 Reports by Trustee to Holders.

Within 60 days after the reporting date stated in Section 10.10, the Trustee shall mail to Securityholders a brief report dated as of such date that complies with TIA Section 313(a) if required by that Section. The Trustee also shall comply with TIA Section 313(b)(2).

A copy of each report at the time of its mailing to Securityholders shall be filed with the SEC and each stock exchange on which Securities are listed. The Company shall promptly notify the Trustee when Securities are listed on any stock exchange and of any delisting thereof.

SECTION 6.7 Compensation and Indemnity.

The Company shall pay to the Trustee from time to time such compensation for its services as the parties shall agree. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket disbursements, expenses and advances incurred by it. Such expenses shall include the reasonable compensation and out-of-pocket disbursements and expenses of the Trustee's agents, counsel and other professionals.

The Company shall indemnify the Trustee for, and hold it harmless against, any loss, liability or expense, including reasonable attorneys' fees, disbursements and expenses, incurred by it arising out of or in connection with the administration of this trust and the performance of its duties hereunder including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder. The Trustee shall notify the Company promptly of any claim for which it may seek indemnity. Failure by the Trustee to so notify the Company shall not relieve the Company of its obligations hereunder. The Company shall defend the claim and the Trustee shall cooperate in the defense. The Trustee may have separate counsel and the Company shall pay the reasonable fees and expenses of such counsel. The Company need not pay for any settlement made without its consent, which consent shall not be unreasonably withheld.

The Company need not reimburse any expense or indemnify against any loss or liability incurred by the Trustee through negligence or bad faith.

To secure the Company's payment obligations in this Section, the Trustee shall have a Lien prior to the Securities on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Securities of any Series.

22

Without prejudice to any other rights available to the Trustee under applicable law, when the Trustee incurs expenses or renders services after an Event of Default specified in Section 5.1(f) or (g) occurs, the expenses and the compensation for the services are intended to constitute expenses of administration under any Bankruptcy Law.

The Company's obligations under this Section 6.7 and any Lien arising hereunder shall survive the resignation or removal of the Trustee, the discharge of the Company's obligations pursuant to Article VII of this Indenture and the termination of this Indenture.

SECTION 6.8 Replacement of Trustee.

A resignation or removal of the Trustee and appointment of a successor Trustee shall become effective only upon the successor Trustee's acceptance of appointment as provided in this Section.

The Trustee may resign at any time with respect to any Series of Securities by so notifying the Company in writing. Provided that no Event of Default has occurred and is continuing, the Company may remove the Trustee with respect to any Series of Securities at any time by so notifying the Trustee of such Series of Securities. The Holders of a majority in principal amount of the Securities of any Series may, by written notice to the Trustee, remove the Trustee as Trustee with respect to that Series of Securities by so notifying the Trustee and the Company. The Company, by notice to such Trustee, shall remove such Trustee if:

    (a) such Trustee fails to comply with Section 6.10;

    (b) such Trustee is adjudged a bankrupt or an insolvent;

    (c) a receiver or public officer takes charge of such Trustee or its property; or

    (d) such Trustee becomes incapable of acting.

If the Trustee resigns or is removed or becomes incapable of acting or if a vacancy exists in the office of Trustee for any reason with respect to one or more Series of Securities, the Company by Board Resolution shall promptly appoint a successor Trustee or Trustees with respect to such Series of Securities (it being understood that any such successor Trustee may be appointed with respect to one or more or all Series of Securities and at any time there shall be only one Trustee with respect to any particular Series of Securities). Within one year after the successor Trustee of a Series of Securities takes office, the Holders of a majority in principal amount of such Securities of the affected Series may appoint a successor Trustee of such Series to replace the successor Trustee of such Series appointed by the Company.

If a successor Trustee for a particular Series of Securities does not take office within 60 days after the retiring Trustee of such Series resigns or is removed, the retiring Trustee of such Series, the Company or the Holders of at least 10% in principal amount of the Securities of the affected Series may petition any court of competent jurisdiction for the appointment of a successor Trustee for such Series.

If the Trustee for a particular Series of Securities fails to comply with Section 6.10, any Securityholder who has been a bonafide Holder of a Security for at least six months may petition any court of competent jurisdiction for the removal of the Trustee of such Series and the appointment of a successor Trustee of such Series. The Company shall give notice of each resignation and each removal of the Trustee with respect to the Securities of any Series and each appointment of a successor Trustee with respect to the Securities of any Series by mailing written notice of such event by first-class mail, postage prepaid, to all Holders of Securities of such Series as their names and addresses appear in the Security Register. Each notice shall include the name of the successor Trustee with respect to the Securities of such Series and the address of its corporate trust office.

A successor Trustee of all Securities shall execute, acknowledge and deliver a written acceptance of its appointment to the retiring Trustee and to the Company. Thereupon the resignation or removal of the retiring Trustee shall become effective, and such successor Trustee shall have all the rights, powers and duties of the retiring Trustee under this Indenture. The retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee, subject to the Lien provided for in Section 6.7.

In case of the appointment hereunder of a successor Trustee with respect to the Securities of one or more (but not all) Series, the Company, the retiring Trustee and each successor Trustee with respect to the Securities of one or more Series shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which (1) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor Trustee all the rights, powers and

23

duties of the retiring Trustee with respect to the Securities of that or those Series to which the appointment of such successor Trustee relates, (2) if the retiring Trustee is not retiring with respect to all Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers and duties of the retiring Trustee with respect to the Securities of that or those Series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee, and (3) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental Indenture shall constitute such Trustee's co-trustees of the same trust and that each such Trustee shall be trustee of a trust of trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor Trustee, without any further action, shall become vested with all the rights, powers and duties of the retiring Trustee with respect to the Securities of that or those Series to which the appointment of such successor Trustee relates; but, on request of the Company or any successor Trustee, such retiring Trustee shall transfer to such successor Trustee all property and money held by such retiring Trustee hereunder with respect to the Securities of that or those Series to which the appointment of such successor Trustee relates, subject to the Lien provided for in Section 6.7.

Upon request of any such successor Trustee, the Company shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts referred to in the two preceding paragraphs, as the case may be.

No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

SECTION 6.9 Successor Trustee by Merger, etc.

If the Trustee consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business to, another corporation, the successor corporation without any further act shall be the successor Trustee.

SECTION 6.10 Eligibility; Disqualification; Conflicting Interests.

This Indenture shall always have a Trustee who satisfies the requirements of TIA Section 310(a)(1) and (10). The Trustee shall always have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. The Trustee shall comply with TIA Section 310(b). Nothing herein shall prevent the Trustee from filing with the SEC the application referred to in the second-to-last paragraph of TIA Section 310(b). If the Trustee has or shall acquire any conflicting interest, with respect to the Securities of a Series, it shall within 90 days after ascertaining that it has such conflicting interest, either eliminate such conflicting interest or resign with respect to the Securities of that Series in the manner prescribed in the TIA. The Trustee shall not be deemed to have a conflicting interest under the TIA by virtue of being a trustee under the Indenture dated as of August 10, 2000 between the Guarantor and the Trustee.

SECTION 6.11 Preferential Collection of Claims Against Company.

The Trustee shall comply with TIA Section 311(a), except with respect to any creditor relationship listed in TIA Section 311(b). A Trustee who has resigned or been removed is subject to TIA Section 311(a) to the extent indicated.

## ARTICLE VII

## SATISFACTION AND DISCHARGE OF INDENTURE

SECTION 7.1 Discharge of Liability on Securities.

If (i) the Company delivers to the Trustee all outstanding Securities of a Series (other than Securities replaced or paid pursuant to Section 2.8 or Securities for whose payment money has theretofore been deposited in trust by the Company with the Trustee or a Paying Agent and thereafter repaid to the Company as provided in the second sentence of Section 7.6) for cancellation or (ii) all outstanding Securities of such Series have become due and payable and the Company irrevocably deposits with the Trustee as trust funds solely for the benefit of the Holders for that purpose funds sufficient to pay at maturity or on redemption the principal of and all accrued interest on all outstanding Securities of such Series (other than Securities replaced or paid pursuant to Section 2.8 or Securities for whose payment money has heretofore been deposited in trust by the Company with the Trustee or Paying Agent and

CALPINE CORPORATION

4.75% CONTINGENT CONVERTIBLE NOTES DUE 2023

AMENDED AND RESTATED

INDENTURE

Dated as of March 12, 2004

WILMINGTON TRUST COMPANY

Trustee

CALPINE CORPORATION

and

THE BANK OF NEW YORK, Trustee

Indenture

Dated as of March 31, 1998

$400,000,000

7⅞% Senior Notes Due 2008

162474.06-New York S7A

CALPINE CORPORATION

and

THE BANK OF NEW YORK, Trustee

Indenture

Dated as of March 29, 1999

$250,000,000

7-5/8% Senior Notes Due 2006

260509.01-New YorkS7A

EXHIBIT A

CALPINE CORPORATION

and

FLEET NATIONAL BANK, Trustee

Indenture

Dated as of May 16, 1996

$180,000,000

10½ % Senior Notes Due 2006



## Corporate Information



HSBC Bank USA, N.A. Headquarters, New York, NY

**HSBC's Principles and Values**

Through loyal and committed employees who make lasting customer relationships and international teamwork easier to achieve.

**Five Core Business Principles:**

- Outstanding customer service
- Effective and efficient operations
- Strong capital and liquidity
- Conservative lending policy
- Strict expense discipline

**We also operate according to certain Key Business Values:**

- The highest personal standards of integrity at all levels;
- Commitment to truth and fair dealing;
- Hands-on management at all levels;
- Openly esteemed commitment to quality and competence;
- A minimum of bureaucracy;
- Fast decisions and implementation;
- Putting the Group's interests ahead of the individual's;
- The appropriate delegation of authority with accountability;
- Fair and objective employer;
- A merit approach to recruitment/selection/promotion;
- A commitment to complying with the spirit and letter of all laws and regulations wherever we conduct our business;
- The promotion of good environmental practice and sustainable development and commitment to the welfare and development of each local community.