**Table of Contents**

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ......................................................................................... 1

PERTINENT FACTS ........................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

POINT I            THE CITIZENSHIP OF THE SENIOR
                   AND SUBORDINATE NOTE HOLDERS,
                   AND NOT THE INDENTURE TRUSTEES,
                   DETERMINES DIVERSITY ................................................................... 5

POINT II           AS A NEW YORK CITIZEN HSBC
                   CANNOT REMOVE THIS ACTION
                   BASED ON DIVERSITY OF CITIZENSHIP ......................................... 12

CONCLUSION ................................................................................................................ 18

**Table of Authorities**

**Federal Cases**

Acuna v. Brown & Root, Inc., 200 F.3d 335 (5th Cir. 2000) ....................................... 5

Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857 (2d Cir. 1995) .................9, 10, 11

Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006) ............................................ 4

Cont'l Bank, N.A. v. Caton, 1990 U.S. Dist. LEXIS 11624, 1990 WL 129452, at *4 (D. Kan. Aug. 6, 1990).................................................................................................. 7

Eclaire Advisor, Ltd. v. Daewo Engineering and Construction Co., Ltd., 375 F. Supp. 2d 257 (S.D.N.Y. 2005) ...................................................................................... 8

Elliott Assoc. v. Henry Schroder Bank & Trust Co., 838 F.2d 66 (2d Cir. 1988)....................... 8

Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192 (3d Cir. 2007)................... 6

Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A., 470 F. Supp. 2d 312 (S.D.N.Y. 2006) ..............................................................................................3, 14, 15

Firstar Bank, N.A. v. Faul, 253 F.3d 982, 994 (7th Cir. 2001)............................ 13, 14, 15, 16, 17

Fleet National Bank v. TWA, 767 F. Supp. 510 (S.D.N.Y. 1991)............................................. 10

Getty Oil Corp., Division of Texaco, Inc. v. Insurance Co. of North Am., , 841 F.2d at 1254...... 5

Grow Group. Inc. v. Jandernoa, 1995 WL 60025, at *1 (S.D.N.Y. 1995)................................... 4

Guaranty Trust Co. v. York, 326 U.S. 99 (U.S. 1945) .............................................. 16

Hispanic Soc'y of the New York City Police Dep't v. New York City Police Dep't, 806 F.2d 1147 (2d Cir.1986) ............................................................................................ 9

Horton v. Bank One N.A., 546 U.S. 1149 (2006)...................................................... 15

Horton v. Bank One, N.A., 387 F.3d 426, 431 (5th Cir. 2004) .................... 13, 14, 15, 16, 17, 18

In re: Board of Directors of Multicanal S.A., 307 B.R. 384 (S.D.N.Y. 2004) ........................... 9

Kubin v. Miller, 801 F. Supp. 1101 (S.D.N.Y. 1992) ................................................. 5

LNC Investments, Inc. v. First Fed Bank, Nat Assn., 935 F. Supp. 133 (S.D.N.Y. 1996) ............ 7

Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 730 (5th Cir. 2002) ............................ 5

Marino v. Ortiz, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam) ................... 9

McGovern v. American Airlines, Inc., 511 F.2d 653 (5th Cir. 1975).............................................5

Meckel v. Continental Resources Co., 758 F.2d 811 (2d Cir. 1985) ............................................7

Navarro Savings Assn. v. Lee, 446 U.S. 458 (1980) ...................................................5, 6, 8, 9, 10

Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186 (2d Cir. 2003)............................................6

Ponte v. Real, 471 U.S. 491 (1985)........................................................................................... 14

Rock Drilling, Etc., Building and Common Laborers' Local Union No. 17 v. Mason & Hanger Co., 217 F.2d 687 (2d Cir. 1954), cert denied, 349 U.S. 915 (1955).......................................6

Stafford v. Mobil Oil Corp., 945 F.2d 803 (5th Cir. 1991) ..........................................................5

Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177 (S.D.N.Y. 2003)........... 12

Union Food Local 919 v. Centermark Props., 30 F.3d 298 (2d Cir. 1994) ...................................4

UPIC & Co. v. Kinder-Care Learning Centers, Inc., 793 F. Supp. 448 (S.D.N.Y. 1992).............. 7

Wachovia Bank v. Schmidt, 388 F.3d 414 (4th Cir. 2004) ................................ 13, 14, 15, 16, 17

Wachovia Bank v. Schmidt, 546 U.S. 303 (2006) ............................................ 2, 3, 12, 13, 16, 17

Wilsey v. Eddingfield, 780 F.2d 614 (7th Cir. 1985), cert. denied, 475 U.S. 1130 (1986)............ 6

World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154 (2d Cir. 2003).. 12

## State Cases

Ambac Indemnity Corp. v. Bankers Trust Co., 151 Misc. 2d 334 N.Y.S. 2d 204 (Sup. Ct. N.Y. Co. 1991)....................................................................................................................................7

Central Bank of Denver, N.A. v. Deloitte & Touche, 928 P.2d 754 (Colo. Ct. App. 1996)..........7

Green v. Title Guarantee & Trust Co., 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.) affd, 248 N.Y. 627 (1929).............................................................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation,<br><br>                              *Plaintiff,*<br><br>                  *–against–*<br><br>HSBC BANK USA, National Association, as Successor Indenture Trustee for the 7.625% Senior Notes Due 2006, the 8.75% Senior Notes Due 2007, the 8.75% Senior Notes Due 2008, and the 7.75% Senior Notes Due 2009 issued by Calpine Corporation,<br><br>                  *–and–*<br><br>U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for the 10.50% Senior Notes Due 2006 issued by Calpine Corporation,<br><br>                              *Defendants.* | 08-CV-03093 (VM)<br><br>ECF Case |

## PLAINTIFF'S MEMORANDUM OF LAW

        This memorandum of law is respectfully submitted on behalf of plaintiff

Manufacturers and Traders Trust Company ("M&T"), in support of its motion, pursuant to 18

U.S.C. §1447, to remand this case to the Supreme Court of the State of New York, County of

New York.

### *Preliminary Statement*

        M&T filed this action in New York State Supreme Court because it solely

involves issues of New York State law, arising out of bankruptcy proceedings that have

transpired in New York.  Each of the parties to this litigation—plaintiff M&T, and co-defendants

- 1 -

HSBC Bank USA, National Association ("HSBC") and  U.S. Bank, National Association ("U.S. Bank")—is acting  here solely in its capacity as an indenture trustee on behalf of the holders of various Calpine Corporation ("Calpine") securities.  The holders of the various securities are the real parties to this controversy, and largely consist, on both sides of the controversy, of hedge funds and financial institutions which undoubtedly include New York citizens for diversity purposes.   Plaintiff M&T is a New York corporation.  One of the defendants, HSBC, boasts of "HSBC Tower", at 39th Street and Fifth Avenue, as its "USA Headquarters," and makes no effort to deny that New York is its principal place of business.  Each of the parties is and has always been represented by New York counsel.  In sum, this is a New York State matter that belongs in New York State Court.

Defendants have nonetheless sought to remove this matter to Federal Court, solely on the grounds of alleged diversity jurisdiction.  Diversity jurisdiction does not properly lie here, for two independently dispositive reasons.

First,  where trustees act as mere agents subject to the control of others, the court should look past the nominal party to the real parties in interest in determining whether diversity exists.  Even though the  burden of establishing diversity rests on the party invoking  removal, here the removing Defendants have failed even to allege the citizenship of the noteholders they represent.  As a result, it is submitted that this action be remanded to State Court.

Diversity jurisdiction is also lacking because HSBC's principal place of business is in fact in New York, a fact we believe HSBC cannot and will not seriously dispute.  Prior to the U.S. Supreme Court's decision in *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the Second Circuit had held that for diversity purposes a national banking association is deemed to

- 2 -

be a citizen of every state in which it has an office.  *Wachovia Bank* overruled this precedent, but did not reach the question, presented here, of whether a national bank is "located" for diversity purposes in the state where it maintains its principal place of business.  On this issue, M&T acknowledges its respectful disagreement with *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006), in which Judge Koeltl held that for diversity purposes a national banking association is a citizen only of the state designated as the location of its "main office" in its articles of association, regardless of where the entity actually does most of its work.  M&T submits that the better approach is to treat national banking associations in the same fashion as corporations, thereby preventing parties such as HSBC from manufacturing purported diversity where, in reality, parties on both sides of the dispute reside in the same state.

*Pertinent Facts*

This action was commenced in  Supreme Court, New York County on February 21, 2008.  It is brought by M&T, as indenture trustee, on behalf of holders of subordinated debt of Calpine against Defendants, HSBC and U.S. Bank, as indenture trustees, on behalf of holders of senior debt of Calpine.  Calpine, an energy company, filed for bankruptcy protection in New York at the end of 2005 and emerged in January 2008.

Under Calpine's confirmed plan of reorganization, a portion of the subordinated debt holders' bankruptcy distribution, in the aggregate amount of approximately $170 million, is the subject of a dispute between the holders of senior debt and subordinated debt instruments. The senior holders claim that they are entitled to "post-petition interest", which is disputed by the subordinated holders.  Accordingly, on behalf of the subordinated holders, M&T seeks declaratory relief that (1) the senior holders are not entitled to "post-petition interest" under the

relevant indentures; (2) certain of the senior holders waived rights of subordination with respect to certain breach of contract claims; and (3) the subordinated holders are not subordinated to the payment of fees and expenses incurred by or on behalf of the senior holders.

On March 26, 2008, Defendants removed this action to this Court on the basis of purported diversity of citizenship. Defendants claim that this action involves a controversy between "citizens of different states" in that M&T is a New York corporation with its principal place of business in New York, while HSBC and U.S. Bank are national banking associations with their main offices, as set forth in their articles of association, in Wilmington, Delaware and Cincinnati, Ohio, respectively. However, HSBC's principal place of business is located in New York, as plainly evidenced by HSBC's own website, which proudly displays a photograph of the "HSBC Bank USA, N.A. Headquarters, New York, NY"—the building known as the "HSBC Tower" at 39th Street and Fifth Avenue. *See* Affidavit of S. Robert Schrager, Exhibit H. Defendants do not indicate in their Notice of Removal the identity or citizenship of the senior holders.

**ARGUMENT**

The party invoking the jurisdiction of a federal court has the burden of proving that the exercise of such jurisdiction is proper. *Union Food Local 919 v. Centermark Props.*, 30 F.3d 298, 301 (2d Cir. 1994). In a removal case, the removing party bears that burden—a burden unaffected by the status of discovery, the number of plaintiffs, or any problems created by state law. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006); *Grow Group. Inc. v. Jandernoa*, 1995 WL 60025, at *1 (S.D.N.Y. 1995)(party seeking removal under 28 U.S.C. §

- 4 -

1332 bears the burden of alleging facts sufficient to establish that removal is appropriate). Any doubt regarding whether removal jurisdiction is proper should be resolved in favor of remand. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 730, 723 (5th Cir. 2002).

Where, as here, the action has been removed based on diversity jurisdiction, defendants must establish that diversity of citizenship is complete; the citizenship of all of the plaintiffs must be different from the citizenship of all of the defendants. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991)(*citing Getty Oil Corp., Division of Texaco, Inc. v. Insurance Co. of North Am.*, 841 F.2d 1254, 1258-59 (5th Cir. 1988)); *Kubin v. Miller*, 801 F. Supp. 1101, 1110 (S.D.N.Y. 1992). "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Id.* (*quoting Getty Oil*, 841 F.2d at 1259; *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975)). Here, Defendants have not discharged their burden of proving complete diversity. Accordingly, this action should be remanded to the State Court.

## POINT I

### THE CITIZENSHIP OF THE SENIOR AND SUBORDINATED NOTE HOLDERS, AND NOT THE INDENTURE TRUSTEES, DETERMINES DIVERSITY

The Supreme Court has held that the relevant "citizens" for diversity purposes must be "real and substantial parties to the controversy." *Navarro Savings Assn. v. Lee*, 446 U.S. 458 (1980). Indeed, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* Thus, "[w]hen

trustees sue in their own names it is critical that they be the real parties to the controversy."

*Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 199 (3d Cir. 2007).[1]  To

establish whether a plaintiff is a "real and substantial party to the controversy," a crucial

distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the

one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual

who has his own stake in the litigation.  Where a plaintiff brings a suit solely in his

representative capacity, the citizenship of the represented party, and not that of the

representative, controls.  *Oscar Gruss & Son, Inc. v. Ho*llander, 337 F.3d 186, 194 (2d Cir.

2003).

      In *Navarro*, the Supreme Court held that "a trustee is a real party to the

controversy for purposes of diversity jurisdiction when he possesses certain customary powers to

hold, manage, and dispose of assets of the benefit of others."  *Navarro Savings Assn. v. Lee*,

4446 U.S. at 464.  As indenture trustees, neither HSBC nor U.S. Bank possess these "customary

---

[1]     This terminology should not be confused with the "real party in interest" standard set forth in Fed R. Civ. P. 17(a), which requires that a lawsuit be brought in the name of the "real party in interest."  That standard is a procedural rule which does not extend or limit the subject matter jurisdiction of a federal court.  *See* Fed. R. Civ. P. 82; *see also* 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1556, at 421 (noting that Rule 17(a) does not operate to confer jurisdiction which does not otherwise exist).  The Supreme Court has noted that while there exists a "'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy…the two rules serve different purposes and need not produce identical outcomes in all cases."  *Navarro*, 446 U.S. at 462 n.9.  Thus, although each of HSBC and U.S. Bank may be a "real party in interest" in the sense that this action properly may be maintained in their names, *see* Fed R. Civ. P. 17(a) (defining real parties-in-interest to include those parties with whom or in whose name a contract has been made for the benefit of another"), HSBC and U.S. Bank must establish that each is the real party to this controversy for the purposes of determining diversity jurisdiction.  *See Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985) ("a representative [under Rule 17(a)] is not necessarily the real party in interest for the purpose of determining diversity jurisdiction"), *cert. denied*, 475 U.S. 1130 (1986); *see also Rock Drilling, Etc., Building and Common Laborers' Local Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687, 693-94 (2d Cir. 1954), *cert denied*, 349 U.S. 915 (1955).

powers" and therefore, neither is "a real party to the controversy for purposes of diversity jurisdiction."

"An indenture trustee is unlike the ordinary trustee." *Ambac Indemnity Corp. v. Bankers Trust Co.*, 151 Misc. 2d 334, 336, 573 N.Y.S. 2d 204, 206 (Sup. Ct. N.Y. Co. 1991). Trustees ordinarily derive their powers from, and have duties imposed upon them by, common law. By contrast, indenture trustees are entirely a creation of contract, the indenture being "a contract entered into between a corporation issuing bonds or debentures and a trustee for the holder of the bonds or debentures which, in general, delineates the rights of the holders and the issuer." *UPIC & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F. Supp. 448, 450 (S.D.N.Y. 1992). *See also Cont'l Bank, N.A. v. Caton*, 1990 U.S. Dist. LEXIS 11624, 1990 WL 129452, at *4 (D. Kan. Aug. 6, 1990) ("Whether the Trustee has the authority to bring the claims in this suit on behalf of the bondholders must be decided from the terms of the Trust Indenture. The rights and powers of the Trustee are a function of the Trust Indenture and cannot be generally expanded in contradiction of the Indenture by reference to broad common law principles."); *Central Bank of Denver, N.A. v. Deloitte & Touche*, 928 P.2d 754, 755 (Colo. Ct. App. 1996), *cert. granted*, ("Whether an indenture trustee is authorized to sue is determined by the terms of the indenture of trust."). *See also LNC Investments, Inc. v. First Fed Bank, Nat Assn.*, 935 F. Supp. 133, 1347 (S.D.N.Y. 1996). (The role of an indenture trustee differs from that of an ordinary trustee in that an indenture trustee must consider the interests of the issuer as well as the investors, and because its obligations are strictly defined and limited to the terms of the indenture.)

While an ordinary trustee is subject to duties beyond those in the trust agreement, such as the duty of undivided loyalty, an indenture trustee has no such obligations. *See Meckel v.*

*Continental Resources Co*., 758 F.2d 811, 816 (2d Cir. 1985). "Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Id.* As a "stakeholder," an indenture trustee does not possess the customary powers of a trustee, but instead assumes duties that in the absence of a default are merely "ministerial." *Elliott Assoc. v. Henry Schroder Bank & Trust Co*., 838 F.2d 66, 71 (2d Cir. 1988).[2]

A review of the respective trust indentures, Exhibits C, D, E, F and G, reveals that, based on the plain and unambiguous terms of these instruments, each of HSBC and U.S. Bank "is more like a stakeholder" possessing ministerial duties rather than a party possessing the "customary powers" of a trustee required in *Navarro*. In *Navarro*, the trustees, who were trustees of business trusts, were authorized "to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." *Navarro*, 446 U.S. at 464. In suing in their capacity as trustees, the trustees sought "damages for breach of an obligation running to the holder of a promissory note held in their own names," and the constituent shareholders had no power to "control the disposition of this action nor intervene in the affairs of the trust[.]" *Id.* The trustees were thus "free from any power and control of the shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right." *Id. See also Eclaire Advisor, Ltd. v. Daewo Engineering and Construction*

---

[2]    It is equally established under New York state common law that an indenture trustee is unlike an ordinary trustee. *See, e.g., Green v. Title Guarantee & Trust Co*., 223 A.D. 12, 227 N.Y.S. 252 (1st Dept.) *aff'd*, 248 N.Y. 627 (1929).

*Co., Ltd.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) (trustee "has 'exclusive power' to prosecute lawsuits").

The status of HSBC and U.S. Bank here stands in stark contrast to the situation in *Navarro*. Neither of these Defendants "has legal title" to any trust assets or the right to "control the litigation." None of the securities issued pursuant to the terms of the subject trust indentures were held or registered in HSBC's or U.S. Bank's name, and neither has exclusive control over any action or proceeding, including this action. To the contrary, the trust indenture expressly provides that "[t]he Holders of majority in principal amount of the Securities may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust power conferred in it." (Section 5.5).[3]

Neither HSBC nor U.S. Bank seeks to defend any corporate interest of its own. Instead, the relief sought in this action involves a declaration as to the respective priorities of the subordinated noteholders and the senior noteholders to certain funds paid by Calpine pursuant to its plan of reorganization. Under these circumstances, HSBC and U.S. Bank are akin to the collection agency that brought suit "in its capacity as representative of numerous air carriers" in *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 859 (2d Cir. 1995). Plaintiff in that case attempted to base diversity jurisdiction on its own limited citizenship, but both Judge Weinstein and the Second Circuit disagreed:

> Where a party sues or is sued in a representative capacity,
> however, its legal status is regarded as distinct from its position

---

[3] Similarly, under Section 316(b) of the Trust Indenture Act of 1939, each holder has a contractual right to principal and interest and to commence a lawsuit if these are not paid when due. Moreover, the right of any holder to institute suit for principal or interest on the holder's bonds or debentures cannot be impaired without consent. *See In re: Board of Directors of Multicanal S.A.*, 307 B.R. 384 (S.D.N.Y. 2004).

> when it operates in an individual capacity. *Cf. Hispanic Soc'y of the New York City Police Dep't v. New York City Police Dep't, 806 F.2d 1147, 1152-53 (2d Cir. 1986); aff'd on other grounds sub nom. Marino v. Ortiz, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam)*. Accordingly, we will not deem ARC's corporate citizenship controlling when it acts merely as an agent representing the interests of others. In such a case, the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute.

*Id*. at 861.  That reasoning is equally applicable here:  like the plaintiff in *Airlines Reporting*, HSBC and U.S. Bank participate in this case solely as "naked trustees" who are "a mere conduit for a remedy owing to others, advancing no specific interests of its own."  *See also Navarro*, 446 U.S. at 465.

Nor does *Fleet National Bank v. TWA*, 767 F. Supp. 510 (S.D.N.Y. 1991), suggest a different result.  In *Fleet*, the district court held that, for purposes of diversity, the citizenship of only plaintiff Fleet, and not the Noteholders, would be considered.  But in *Fleet*, unlike here, the indenture trustee's action was "clearly one to collect principal and interest from TWA," which was "clearly an action encompassed within the powers granted by senior indentures".  Id. at 514. Thus, "In the case before us, the indentures authorize Fleet to accelerate the notes, pursue remedies at law and equity, and to recover in its own name as trustee of an express trust." *Id.* at 515.

Here, in contrast, HSBC and U.S. Bank are not involved with a dispute with the issuer related to the collection of any defaulted payments.    Rather, this is a dispute the relative rights of the senior and subordinated debt holders under the terms of the governing indentures— and under the terms of those indentures, HSBC and U.S. Bank do not have the right, as did the trustee in *Fleet*, "to pursue remedies at law and equity and to recover in its own name as trustees of an express trust."  Those rights are limited by Section 5.8 of the indentures, Exhibits C-G, to

- 10 -

actions to recover defaulted payments of principal and interest (which was the gravamen of the claim in *Fleet*). In the case of *all other* defaults and disputes, such as the one at issue here, HSBC's and U.S. Bank's authority is limited by Section 5.5, and "[t]he Holders of majority in principal amount of the Securities may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust power conferred in it." In such instances, HSBC and U.S. Banks are indeed "naked trustees."

Moreover, the dispute at bar involves the respective rights of two separate groups of holders under the terms of the Calpine plan of reorganization. The indentures at issue in this case specifically deny the trustees authority with respect to plans of reorganization and reserve those rights to the noteholders:

> No provision of this Indenture shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan or reorganization, arrangement, adjustment or composition affecting the Securities, the Guarantee or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding….

Exhibits C-G; Section 5.9.

Hence, by the specific language of the governing indentures, HSBC and U.S. Bank were denied powers to act with respect to the very bankruptcy plan that underlies this action.

Therefore, with respect to this dispute—the respective rights of the noteholders to funds paid under the Calpine plan of reorganization—it is the citizenship of the senior holders that controls for diversity purposes, "as they are the real and substantial parties to the dispute." *Airlines Reporting*, 58 F.3d at 862. Because Defendants have made no allegation or showing at all as to the citizenship of the senior holders, this action must be remanded to the State Court.

- 11 -

## POINT II

### AS A NEW YORK CITIZEN HSBC CANNOT REMOVE
### THIS ACTION BASED ON DIVERSITY OF CITIZENSHIP

Even if HSBC's and U.S. Bank's citizenship were relevant for diversity purposes, plaintiff's motion to remand should be granted because defendant HSBC is a citizen of the State of New York, the state in which its "principal place of business" is located.  Exhibit H.

As a national banking association, HSBC's citizenship is governed by 28 U.S.C. § 1348, which provides that "[a]ll national banking associations shall . . . be deemed citizens of the States in which they are respectively located."  Because HSBC's "principal place of business" is in New York, it is "located" in New York, and therefore this action must be remanded to State Court where it was commenced. 28 U.S.C. § 1441 (b); *see Stan Winston Creatures, Inc v. Toys "R" Us, Inc*., 314 F.Supp.2d 177, 180 (S.D.N.Y. 2003).

Prior to the recent Supreme Court decision *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the meaning of "located" for purposes of 28 U.S.C. § 1348 and, therefore, the question of a national bank association's citizenship, had been interpreted by four circuits, coming to two different conclusions:  (1) That a national bank is a citizen of each state in which even a single branch is located.  *See World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co*., 345 F.3d 154, 161 (2d Cir. 2003);  *Wachovia Bank v. Schmidt*, 388 F.3d 414 (4th Cir. 2004) or (2) That a national bank, like a corporation, was only a citizen of its principal place of business and its "main office", as stated in its organization certificate.  *See Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir. 2004);  *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001).

In *Wachovia*, a South Carolina resident brought suit alleging fraud in a South Carolina state court against Wachovia Bank, a national bank with both its main office, as designated in its articles of association, and its principal place of business in North Carolina. Wachovia also had branches in South Carolina. 546 U.S. at 307-08. Wachovia subsequently brought an action in federal court to compel arbitration of the state court claim. *Id.* at 308. The district court did not contest Wachovia's assertion of diversity jurisdiction. On appeal, the Fourth Circuit held that the court lacked jurisdiction over Wachovia's claim because, for purposes of 28 U.S.C. § 1348, Wachovia was "located" wherever it maintained branches—including South Carolina. *Id.* Thus, the circuit court reasoned, because the plaintiff and defendant were both South Carolina citizens, the court lacked diversity jurisdiction. *Id.*

The Supreme Court overruled the position taken by Fourth Circuit (and, previously, the Second Circuit) that a national bank is a citizen of each state in which a branch office is located. *Id.* at 307. However, because *Wachovia's* main office and its principal place of business were both in North Carolina, the Supreme Court expressly left unanswered the question of whether a national bank is also a citizen of the state of its principal place of business where that state was different from the state of its main office designated in its articles of association. The Court alluded to this open issue in a footnote:

> To achieve complete parity with state banks and other state incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. *See Horton,* 387 F.3d, at 431, and n. 26; *Firstar Bank, NA.,* 253 F.3d, at 993-994. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States

- 13 -

in which they are respectively located." The absence of a "principal place of business reference in § 1348 **may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.**

*Id.* at 317 n. 9. (emphasis added).

Since *Wachovia*, the Second Circuit has not ruled on the issue of whether for diversity purposes a national banking association is a citizen of both the state of its principal place of business and the state of its designated main office when those are in different states. We are aware of only a single decision to have reached this question, *Excelsior Funds, Inc. v. JP Morgan Chase Bank*, which recognized that "*Wachovia Bank* did not conclusively resolve whether the term 'located' in §1348 should be interjected to include a national bank's principal place of business as a basis for citizenship," but held that "a national bank is a citizen only of the state in which its main office is located, and not the state in which its principal place of business is located, if that state differs from the location of its main office." 470 F. Supp. 2d 312, 313 & 317 (S.D.N.Y. 2006). We respectfully submit that *Excelsior Funds* was incorrectly decided, and should not be followed here, because it disregarded *Firstar* and *Horton*, whose holdings were left standing by the Supreme Court, and it ignores the intent and purpose of 28 U.S.C. §1348.[4]

Both *Firstar* and *Horton* found that the purpose of § 1348 was to maintain jurisdictional parity between national banks and state banks. Thus, the *Horton* court held:

We construe section 1348 in light of Congress's intent to maintain

---

[4]    The Supreme Court denied certiorari in both *Firstar* and *Horton*. The denial of certiorari in *Horton* took place on January 23, 2006, six days *after* the Court decided *Wachovia Bank. See Horton v. Bank One N.A.*, 546 U.S. 1149 (2006). The legal effect of a denial of certiorari is to leave the decision below standing as good law. *See Ponte v. Real*, 471 U.S. 491, 502 (1985).

> jurisdictional parity between national banks on the one hand and
> state banks and corporations on the other. We hold that the
> definition of "located" is limited to the national bank's principal
> place of business and the state listed in its organization certificate
> and its articles of association. This results in a national bank's
> having access to federal courts by diversity jurisdiction to the same
> extent as a similarly situated state bank or corporation.

*Id*. at 436.

Similarly, *Firstar* held that because state banks, like other corporations, are

potentially citizens of two states, the state of incorporation and the state where it has its principal

place of business, national banks should be similarly treated.  253 F.3d at 993-994.[5]  *Id*.

This Court should follow the rule enunciated in *Firstar* and *Horton*, and left

standing by the Supreme Court in *Wachovia*.[6]

In *Wachovia*, the Supreme Court simply leveled the playing field between

national banks and state banks by overruling that line of cases which had the effect of greatly

reducing access to federal court for those banks, like *Wachovia*, with branches in many states.

*Wachovia*, 303 U.S. at 310-12.  The effect of *Excelsior Funds* would be to tilt the playing field in

favor of national banks over state banks, by limiting their citizenship for diversity purposes to a

single factor rather than the dual factors which apply to state banks and corporations generally.

The Supreme Court's preoccupation with parity is also evident in the questions of

---

[5]    In a 2002 interpretive letter, the Office of the Comptroller of the Currency (the "OCC") stated that the "interpretation of [§ 1348] and fundamental reasoning of the *Firstar Bank, N.A. v. Faul* court are correct.  National banks are to be treated for diversity jurisdiction purposes in a manner similar to state banks."  OCC Interp. Ltr. 952 (Oct. 23, 2002) (*available at* http://www.occ.treas.gov/interp/feb03/int952.pdf).  Like *Firstar*, the OCC concluded that a national bank should be a citizen of two states: "the state *in which its principal place of business is located* and…the state that was originally designated in its organization certificate and articles of association[.]"  *Id*. (emphasis added).

[6]    Indeed, as *Horton*, decided in 2004, noted: "every district court that has since confronted [§1348] has agreed with *Firstar*." 387 F.3d at 429 (citing *Adams v. Bank of Am., N.A.*, 317 F.Supp.2d 935,941-42 (S.D. Iowa 2004); *Evergreen Forest Prods. Of Ga. LLC v. Bank of Am., N.A.*, 262 F.Supp.2d 1297, 1307 (M.D. Ala. 2003); and *Bank One. N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 810 (N.D. Tex. 2002)).

the Court during oral argument, where the Chief Justice raised concerns that an interpretation of § 1348 limiting a national bank's citizenship to only the state designated in its articles of association would put national banks in a "favored position" as compared to state banks in terms of their access to federal courts on diversity jurisdiction.  Transcript of Oral Argument at *9, *Wachovia*, 546 U.S. at 303 (No. 04-1186).

Ultimately, the Court confined its decision to the question on which certiorari was granted, but it nonetheless made clear that "[t]o achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business." *Wachovia*, 546 U.S. at 317 n.9 (citing *Horton* and *Firstar* with approval).

Given the considerable importance the Supreme Court accorded the concern for parity, this Court should follow *Firster* and *Horton*, and hold that for purposes of § 1348, a national bank is a citizen of the state designated as its main office in its articles of association *and* a citizen of the state of its principal place of business.

The purpose of diversity jurisdiction is to provide out-of-state defendants relief from potential bias in state court.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 111 (U.S. 1945) ("Diversity jurisdiction is founded on assurance to nonresident litigants of courts free from susceptibility to potential local bias.").  A local defendant is not permitted to remove a case from state court because there exists no danger of such bias.  *See* 28 U.S.C. 1441(b).  The matter before this Court illustrates why a national bank must be considered a citizen of the state of its principal place of business: because HSBC's principal place of business is New York, it faces no danger of local bias and therefore has no reason to remove the action from State Court.  This

Court should preserve the purpose of diversity jurisdiction by recognizing that a national bank is a citizen of the state of its principal place of business in addition to that specified in its articles of association.

**Conclusion**

For all the foregoing reasons, the Court should grant  plaintiff's motion and remand this action to the New York Supreme Court, County of New York.

Dated: New York, New York
      April 24, 2008

Respectfully submitted,

s/*S. Robert Schrager*

S. Robert Schrager
Joel Wolosky
**HODGSON RUSS LLP**
60 East 42nd Street
New York, NY  10165
212.661.3535

   -and-

Rolin P. Bissell
Norman M. Powell
Elena C. Norman
Ian S. Fredericks
**YOUNG CONAWAY STARGATT**
     **& TAYLOR, LLP**
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600

Attorneys for Plaintiff Manufacturers and Traders Trust Company, as Successor Indenture Trustee for the 7.75% Convertible Notes due 2015 issued by Calpine Corporation

- 18 -