Sarah L. Reid
Alison L. MacGregor
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
*Attorneys for Defendant HSBC Bank USA, National*
*Association, as Successor Indenture Trustee*

Kathleen M. LaManna
Marie C. Pollio                                    Brian Damiano
SHIPMAN & GOODWIN LLP                DUANE MORRIS LLP
One Constitution Plaza                        1540 Broadway
Hartford, Connecticut 06103               New York, New York 10036
(860) 251-5000                                   (212) 202-5000
*Attorneys for Defendant U.S. Bank National Association,*
*as Successor Indenture Trustee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MANUFACTURERS AND TRADERS TRUST
COMPANY, as Successor Indenture Trustee for the
7.75% Contingent Convertible Notes Due 2015
issued by Calpine Corporation,

     Plaintiff,

        -against-

HSBC Bank USA, National Association, as
Successor Indenture Trustee for the 7.625% Senior
Notes Due 2006, the 8.75% Senior Notes Due 2007,
the 8.75% Senior Notes Due 2008, and the 7.75%
Senior Notes Due 2009 issued by Calpine
Corporation,

       - and –

U.S. BANK NATIONAL ASSOCIATION, as
Indenture Trustee for the 10.50% Senior Notes Due
2006 issued by Calpine Corporation,

     Defendants.

---

ECF Case
Case No. 08-CV-3093 (VM) (GWG)

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

      A.    The Calpine Bankruptcy and the Claims at Issue ..................................... 3

      B.    Jurisdictional Allegations ........................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.    THE CITIZENSHIP OF THE INDENTURE TRUSTEES DETERMINES
         DIVERSITY ........................................................................................... 7

      A.    It is Well Settled Law That The Citizenship of an  Indenture
            Trustee Controls for Diversity Purposes ................................................... 8

      B.    Plaintiff's Authority Is Inapposite ......................................................... 13

      C.    The Citizenship Rules Proposed by Plaintiff Are Impractical and
            Contrary to the Principles Espoused by the United States Supreme
            Court ...................................................................................................... 16

    II.    THIS CASE WAS PROPERLY REMOVED BECAUSE THERE IS
         COMPLETE DIVERSITY OF CITIZENSHIP ................................................... 18

CONCLUSION .................................................................................................................. 25

i

# TABLE OF AUTHORITIES

## CASES

*Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857 (2d Cir. 1995)...............15, 16

*Bank of New York v. Tri Polyta Fin. B.V.*, No. 01 Civ. 9104 (LTS) (DFE),
    2003 WL 1960587 (S.D.N.Y. April 5, 2003) ...........................................................10

*Bremer Bank, N.A. v. John Hancock Life Ins. Co.*,
    Civ. No. 06-1534 (ADM) (JSM), 2007 WL 1057056 (D. Minn. Apr. 9, 2007)....10, 20

*Castelo v. Nat'l City Bank of Midwest*, No. 06-2078, 2006 WL 2325101
    (C.D. Ill. Aug 9, 2006).....................................................................................................20

*Cavadi v. Bank of America, N.A.*, No. 07-cv-224 (PB),
    2007 U.S. Dist. LEXIS 80346 (D.N.H. Oct. 30, 2007) ..............................................20

*Connecticut. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76
    (S.D.N.Y. 1991) .........................................................................................................9, 18

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
    375 F. Supp. 2d 257 (S.D.N.Y. 2005)........................................................................16

*Elliot Assoc. v. J. Henry Schoder Bank & Trust Co.*, 838 F.2d 66
    (2d Cir. 1988)...................................................................................................................8

*Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192
    (3d Cir. 2007)................................................................................................................14

*Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*, 470 F. Supp. 2d 312
    (S.D.N.Y. 2006) .............................................................................. 2, 18, 19, 21- 24

*Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001) ...............................19, 20, 21, 22

*Fleet Nat'l Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510
    (S.D.N.Y 1991) ...............................................................................................2, 8, 9, 10, 11

*Halifax Corp. v. Wachovia Bank, N.A.*, No. 05-1952, 2006 WL 1818202
    (4th Cir. June 28, 2006) ...............................................................................................19

*Hicklin Eng'g, L.C. v. Bartell*, 439  F.3d 346 (7th Cir. 2006) ..........................................19

*Hinton v. Wachovia Bank of Delaware Nat'l Ass'n*, No. 05-5750,
    2006 WL 1751293 (6th Cir. June 27, 2006) ..............................................................20

*Horton v. Bank One, N.A.*, 378 F.3d 426 (5th Cir. 2004) ......................................20, 21, 22

*In re Bank of New England Corp.*, 364 F.3d 355 (1st Cir. 2004).........................................5

*In re Southeast Banking Corp.*, 179 F.3d 1307 (11th Cir. 1999)..........................................5

*Indus. Valley Bank & Trust Co. v. Dilks Agency*, 751 F.2d 637 (3d Cir. 1985)...............10

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88
   (2002)..........................................................................................................................9, 10

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) ................................................1, 9, 11, 14

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003)...............................16

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*,
   No. 98 Civ. 6907 (MBM), 2000 WL 877004 (S.D.N.Y. June 30, 2000) ...................15

*Philip v. L.F. Rothschild & Co.*, No. 90 Civ. 0708 (WHP),
   2000 WL 1263554 (S.D.N.Y. Sept. 5, 2000).........................................................13, 15

*Prime Fin. Servs., LLC v. Bank One, NA*, No. 1:04-CV-414,
   2006 WL 335769 (W.D. Mich. Feb. 14, 2006).........................................................20

*UPIC & Co. v. Kinder-Care Learning Centers, Inc.*,
   793 F. Supp. 448 (S.D.N.Y. 1992) ...........................................................................15

*Verex Assurance, Inc. v. First Interstate Bank of California*, No. 93-1949,
   1994 WL 499619 (5th Cir. Aug. 22, 1994)................................................................10

*Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006)....................................2, 16-22, 24

## STATUTES

28 U.S.C. § 1332..............................................................................1, 2, 7, 21- 24

28 U.S.C. § 1348..............................................................................1, 2, 21- 24

28 U.S.C. § 1447..................................................................................1, 2, 24

Bankruptcy Code § 510 ..........................................................................1, 2, 5

## MISCELLANEOUS

16A *Fletcher Cyc. Corp.* § 8228 (2007) ..................................................14, 15

12A *C.J.S. Business Trusts* § 2 (2008)....................................................14, 15

Defendants HSBC Bank USA, National Association, as Successor Indenture Trustee ("HSBC") and U.S. Bank National Association, as Successor Indenture Trustee ("U.S. Bank," and together with HSBC, the "Senior Notes Trustees" or "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiff's motion under 28 U.S.C. § 1447 to remand this case to the Supreme Court of the State of New York, County of New York.

## PRELIMINARY STATEMENT

This lawsuit arises out of the bankruptcy of Calpine Corporation ("Calpine"), the issuer of the senior and subordinated debt for which the parties are indenture trustees. Plaintiff Manufacturers and Traders Trust Company ("M&T" or "Plaintiff") brings suit in its own name seeking declaratory judgment that Defendant indenture trustees HSBC and U.S. Bank are not entitled to certain sums on their own behalf or on behalf of their holders from Calpine bankruptcy distributions. The primary issues in this case will revolve around the meaning of Bankruptcy Code § 510(a) and the effect of a bankruptcy settlement. Defendants have removed this case to federal court based on diversity jurisdiction. Under 28 U.S.C. § 1348, a national association is a citizen of only one state, the state designated as the place where its main office is located in its Articles of Association. In this case, that is Delaware for HSBC and Ohio for U.S. Bank. Under 28 U.S.C. § 1332(c)(1), M&T, a New York banking corporation, is a citizen of New York. Thus, there is complete diversity.

Plaintiff's motion to remand is premised on two unsupportable arguments. First, Plaintiff argues that under *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), diversity jurisdiction should be premised on the citizenship of the debt securities holders and not the citizenship of the Defendant indenture trustees. Plaintiff can cite to no case, however, to support its novel position. In fact, *Fleet Nat'l Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510 (S.D.N.Y 1991), holds

just the opposite. Courts have uniformly looked to the citizenship of the corporate indenture trustee to determine diversity jurisdiction. Plaintiff's argument to the contrary flies in the face of the settled law in this area and should be rejected.

Plaintiff's second argument, that this Court should import the two-state jurisdictional test of 28 U.S.C. § 1332(c)(1) into 28 U.S.C § 1348, has been squarely rejected under the authority of *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). Plaintiff has not cited a single post-*Wachovia* case which holds that a national association's citizenship is determined by anything other than its main office as designated in its Articles of Association. Courts have routinely held to that effect. Plaintiff dismisses the one case directly on point, *Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006), as "incorrectly decided" (Mot. to Remand at 14),[1] but cites no authority for its claim. A reading of that decision, which is directly on point in this case, shows a careful and reasoned opinion which unequivocally rejects Plaintiff's position.

Plaintiff's motion to remand should be denied. Complete diversity exists and a federal forum is particularly well suited to considering the bankruptcy-related issues raised by the interplay of § 510(a), state law and the two federal circuit decisions which have considered these issues.

## STATEMENT OF FACTS

On February 21, 2008, Plaintiff filed its Complaint in the Supreme Court of the State of New York, County of New York. Plaintiff's Complaint seeks declaratory relief concerning the rights and obligations of Plaintiff and Defendants with respect to the bankruptcy

---

[1]    "Mot. to Remand" refers to Plaintiff's Memorandum of Law in support of its motion, pursuant to 28 U.S.C. § 1447, to remand to the Supreme Court of the State of New York, County of New York, dated April 24, 2008.

distributions made or to be made by Calpine in connection with certain indentures governing notes Calpine has issued.[2]

A.     **The Calpine Bankruptcy and the Claims at Issue**

On December 20, 2005, Calpine commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On December 19, 2007, the Bankruptcy Court confirmed the Debtors' Sixth Amended Joint Plan of Reorganization (the "Plan"). Compl. ¶ 32.[3] The Plan provided that claims under the 7.75% Convertible Notes (the "Subordinated Notes") were subordinated to the extent necessary to satisfy the Senior Notes Trustees' claims attributable to principal and pre-petition interest. *Id*. ¶ 33. The Plan also provided that the amount to which the Subordinated Notes were to be subordinated to other amounts would be determined by a court of competent jurisdiction as part of the "Intercreditor Subordination Dispute" defined in the Plan. *Id*. ¶ 34. In contemplation of this dispute, the Plan provided that the Debtor would establish an Intercreditor Subordination Dispute Escrow Account pending the resolution of the Intercreditor Subordination

---

[2]     Defendant HSBC is the successor indenture trustee for the following series of notes issued by Calpine: $102,194,000 aggregate principal amount of the 7.625% Senior Notes due 2006; $190,299,000 aggregate principal amount of the 8.75% Senior Notes due 2007; $173,761,000 aggregate principal amount of the 7.875% Senior Notes due 2008; and $180,602,000 aggregate principal amount of the 7.75% Senior Notes due 2009), and Defendant U.S. Bank is the successor indenture trustee for $139,205,000 aggregate principal amount of the 10.50% Senior Notes due 2006 issued by Calpine (collectively, the "Senior Notes"). Compl. ¶¶ 11, 12. The Senior Notes were issued pursuant to the indentures attached as Exhibits A through D to the Declaration of Sandra E. Horwitz dated May 12, 2008, and submitted herewith ("Horwitz Decl."), and as Exhibit A to the Declaration of Stephen Rivero dated May 12, 2008, and submitted herewith ("Rivero Decl.") (collectively, the "Senior Notes Indentures"). Plaintiff M&T is the successor indenture trustee for the 7.75% Contingent Convertible Notes due 2015, as supplemented by the Third Supplemental Indenture, dated as of June 23, 2005, issued by Calpine Corporation (the "Subordinated Notes Indenture"). *See* Compl. ¶ 10.

[3]     "Compl.__" refers to Plaintiff's Complaint filed on February 21, 2008 in the Supreme Court of the State of New York, County of New York. A true and correct copy of the Complaint is attached as Exhibit A to Defendants' Joint Notice of Removal, filed on March 26, 2008 [Docket Entry # 1].

Dispute. *Id.* ¶ 35. The Debtor issued a notice of the occurrence of the effective date of the Plan on January 31, 2008. *Id.* ¶ 36. Three weeks later, Plaintiff filed its Complaint in this action, which arises over the respective rights of the Senior Notes Trustees and Plaintiff to the funds in the escrow account and to future distributions by Calpine.

The Plaintiff's subordinated indenture at issue in this case provides that any distributions subject to these disputes that might be paid otherwise to the Subordinated Note Holders are to be first paid to the Senior Notes Trustees or Senior Note Holders,[4] and that to the extent the Plaintiff, the indenture trustee for the Subordinated Notes (the "Subordinated Notes Trustee"), receives such distributions, it is obligated to hold such funds for the benefit of the Senior Note Holders. *See* Compl. Exh. B at § 11.03. Under the terms of any Escrow Agreement, the Senior Notes Trustees and/or the Subordinated Notes Trustee will ultimately receive the funds to be disbursed pursuant to a final court order.

Plaintiff's Complaint against the two Senior Notes Trustees asserts three causes of action for declaratory relief. Each of these causes of action is connected to Calpine's bankruptcy proceedings. Plaintiff has not named any Senior Note Holders as defendants.

First, Plaintiff claims that it is entitled to a judgment declaring that "the [Subordinated] Notes are *not* subordinate to the payment of post-petition interest arising under the Senior Notes, and the [Subordinated] Note Holders are not required to pay over any portion of their initial or future distributions . . . attributable to post-petition interest . . . arising under the Senior Notes to, or for the benefit of, the Senior Notes Trustees or the Senior Note Holders, under the Indenture, the Plan or otherwise." Compl. ¶ 52. The dispute over the payment of post-

---

[4]     "Senior Note Holders" refers to the holders of notes issued under the Senior Notes Indentures. "Subordinated Note Holders" refers to holders of notes issued under the Subordinated Notes Indenture.

petition interest in the bankruptcy context by subordinated holders to senior holders is an

ongoing controversy that has led to opinions by two federal circuits concerning the interpretation

of § 510(a) of the Bankruptcy Code.  *See In re Bank of New England Corp.*, 364 F.3d 355 (1st

Cir. 2004) and *In re Southeast Banking Corp.*, 179 F.3d 1307 (11th Cir. 1999).  Interpreting

these two decisions will be central to the present dispute.

Second, as against HSBC only, Plaintiff seeks a judgment declaring that the

Subordinated Notes are not subordinate to the payment of certain claims of the HSBC Senior

Note Holders arising from a settlement approved on October 10, 2007, by the Bankruptcy Court,

after notice and hearing.  *See Compl.* ¶¶ 25, 60.  Plaintiff claims that it is entitled to a declaration

that its notes "are not subordinate to the payment of the Settling Senior Note Holders' Asserted

Breach of Contract Claims or Allowed Breach of Contract Claims, and the [Subordinated] Note

Holders are not required to pay over any portion of their initial or future distributions …

attributable to such claims … to, or for the benefit of, the Settling Senior Note Holders, under the

Indenture, the Plan or otherwise."[5]  *Id.* ¶ 60.  The contract in Plaintiff's claim is the Stipulation

and Order entered by the Bankruptcy Court for the Southern District of New York settling

certain claims brought by HSBC as Senior Notes Trustee for additional principal in the form of

"makewhole amounts."  *See id.* Exh. D.  Interpretation of this Stipulation and Order will be

central to the determination of this claim.

Third, Plaintiff seeks a declaratory judgment that payments to the Subordinated

Note Holders are not subordinated to the fees and expenses due to the Senior Notes Trustees.  To

wit, Plaintiff seeks a "judgment declaring that the [Subordinated] Notes are not subordinate to

---

[5]        "Settling Senior Note Holders" refers to the holders of notes issued under two of the indentures
for which HSBC is indenture trustee.  Under the terms of settlement as reflected by the
Stipulation and Order (*see* Compl. Exh. D), HSBC was granted an allowed general unsecured
claim in the total amount of $3,650,000 on behalf of the Settling Senior Note Holders, of which
approximately $554,800 remains unpaid.  *Id.* ¶¶ 25-27.

the payment of any fees and expenses incurred by the Senior Notes Trustees or the Senior Note

Holders, and the [Subordinated] Note Holders are not required to pay over any portion of their

initial or future distributions . . . attributable to such claims . . . *to, or for the benefit of, the Senior*

*Notes Trustees* or the Senior Note Holders, under the Indenture, the Plan or otherwise." Compl.

¶ 66 (emphasis added).  Clearly, this is a claim which directly affects the Senior Notes Trustees.

On April 15, 2008, HSBC and U.S. Bank separately filed in this Court their

Answers, Affirmative Defenses, and Counterclaims to the Complaint [Docket Entries # 8, 9].

The Counterclaims filed by Defendants U.S. Bank and HSBC request a judgment declaring that

payment in full of all amounts due on the Senior Notes, including post-petition interest and fees

and expenses, is required, prior to the payment of any amounts due on the Subordinated Notes.

HSBC asserts an additional counterclaim requesting a judgment declaring that payment in full of

all the Senior Note Holders' Asserted Breach of Contract Claims or Allowed Breach of Contract

Claims is required, prior to the payment of any amounts due on the Subordinated Notes.

### B.    Jurisdictional Allegations

In its Complaint, Plaintiff alleges that it is "a New York banking corporation with

an office located at 25 South Charles Street, Baltimore, Maryland 21201." Compl. ¶ 10.

Plaintiff M&T is the indenture trustee for the Subordinated Notes. *See id.* Plaintiff's 2007 10K

lists its principal place of business as One M&T Plaza, Buffalo, New York 14203. *See* M&T

Bank Corp., Form 10K filed February 21, 2008 (available at

http://www.shareholder.com/Common/Edgar/36270/950152-08-1291/08-00.pdf).

HSBC is a national banking association.  HSBC's Articles of Association list its

main office as located in Wilmington, Delaware.  Horwitz Decl. Exh. E.  U.S. Bank is a national

banking association.  U.S. Bank's Articles of Association list its main office as located in

Cincinnati, Ohio.  *See* Rivero Decl. Exh. B.

No direction has been given by the holders of debt securities for which either HSBC or U.S. Bank is Indenture Trustee. *See* Horwitz Decl. ¶ 3; Rivero Decl. ¶ 14.

Defendants timely filed their Notice of Removal with this Court on March 26, 2008, and filed a Notice of Filing of Notice of Removal with the New York Supreme Court on March 27, 2008. Defendants' Notice of Removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a), and states, in relevant part:

> 7.    This action involves a controversy between citizens of different states, in that: (a) Plaintiff M&T is now, and was at the time the action was commenced a "New York banking corporation" (Complaint at ¶10) incorporated in the State of New York, with, upon information and belief, a principal place of business at One M&T Plaza, Buffalo, New York 14203; (b) Defendant HSBC is now, and was at the time the action was commenced, a national banking association with its main office, as set forth in its Articles of Association, in Wilmington, Delaware; and (c) Defendant U.S. Bank is now, and was at the time the action was commenced, a national banking association with its main office, as set forth in its Articles of Association, in Cincinnati, Ohio.

This action was then removed to this Court and assigned to the Honorable Victor Marrero. M&T filed its Motion to Remand on April 24, 2008.

## ARGUMENT

### I.    THE CITIZENSHIP OF THE INDENTURE TRUSTEES DETERMINES DIVERSITY

Plaintiff makes an unprecedented argument when it urges this Court to look to the citizenship of debt holders instead of the corporate trustee in order to determine whether there is diversity. Plaintiff has cited no authority holding that a court must look to the citizenship of the holders of debt issued under an indenture, as opposed to the indenture trustee. Indeed, the one on-point case Plaintiff cites dealing with an indenture trustee holds exactly the opposite. Instead, M&T makes its argument based on irrelevant authority dealing with business trusts and other

legally distinguishable entities.  It is clear that based on the rights and duties set out in the Senior

Notes Indentures, and based on their direct interest in this dispute, Defendants are the "real and

substantial" parties to the controversy and as such their citizenship – and not that of the Senior

Note Holders – governs.  Indeed, it would be utterly impractical and arbitrary to look to holders

of beneficial interests in the Senior Notes because such interests are subject to active trading, and

the identity of the holders may change.  It is not surprising that in the century or so of

jurisprudence dealing with indenture trustees, Plaintiff cannot cite to a single case holding as

Plaintiff now urges.  That is because under federal and state law, indenture trustees are active

corporate trustees who, post-default, are not merely conduit entities, but are fiduciaries with very

real duties to protect the interests of their holders by, among other things, necessary litigation.

### A.    It is Well Settled Law That The Citizenship of an Indenture Trustee Controls for Diversity Purposes

The only case that M&T cites involving the issue of diversity of an indenture

trustee finds that the citizenship of the indenture trustee, not the holders, controls.[6]  In *Fleet*

*Nat'l Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510, 512 (S.D.N.Y. 1991), Fleet was

"trustee for two sets of senior unsecured notes issued by TWA."  After events of default occurred

under the indentures, Fleet commenced an action against TWA seeking damages for failure to

pay interest on the two series of notes, and seeking injunctive relief to prevent TWA from

amending the subordination provisions in the indentures governing junior notes, or purchasing

junior notes.  *Id*. at 513.  The Southern District of New York , by Judge Goettel, held that

diversity was determined by the citizenship of Fleet, as opposed to the individual senior holders.

---

[6]    The rest of the cases cited by M&T that mention indenture trustees stand for the proposition that the duties of an indenture trustee are not that of an ordinary trustee under the common law but that an indenture trustee's *pre-default* obligations are defined by the indenture agreement itself.  *See, e.g., Elliot Assocs. v. J. Henry Schoder Bank & Trust Co*., 838 F.2d 66, 71 (2d Cir. 1988) (holding that pre-default, indenture trustees obligations are limited to those spelled out in the indenture).  This issue is not in dispute in the present motion.

*Id*. at 515.  The court held "[t]his is not a situation contemplated by the *Navarro Savings* Court wherein the trustee has no powers and no relation to the case itself, but rather, is named solely because of the procedural requirements that the case be brought in another's name."  *Id*. at 514 (distinguishing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)).  The court found that:

> [i]n the case before us, the indentures authorize Fleet to accelerate
> the notes, pursue remedies at law and equity, and to recover in its
> own name as trustee of an express trust.… While it is clear that
> some noteholders were favorably inclined to bringing this action, it
> would be irrelevant even if 100% of the noteholders had been
> located and had given their consent to the trustee's actions.  This
> does not render the trustee a naked trustee because the fact remains
> that Fleet's actions are consistent with its obligations under the
> indentures, notwithstanding the fact that the funds it may collect
> will inure to the benefit of the noteholders.  In consonance with
> this finding is the fact that section 6.06 of the Senior Indentures
> imposes five requirements on the noteholders before they can sue
> on their own behalf… This clearly presumes that the trustee should
> be given the first chance to bring the suit.

*Id*. at 515.  *See also Connecticut. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991) (rejecting the argument that plaintiff was merely a "naked trustee" because, *inter alia*, the remedy sought was provided for in the agreement between the parties, and the beneficiaries did not have the power to seek return of the property).

M&T asks this Court to disregard direct authority and established law that shows that courts will look to the citizenship of the indenture trustee for diversity purposes.  Courts have consistently looked to the citizenship of the indenture trustee for diversity purposes, without *any* analysis of who is the real party in interest.  *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91 (2002) (the Supreme Court found alienage diversity existed where plaintiff, a New York corporation, was an indenture trustee suing on behalf of its holders and defendant was a British Virgin Island corporation); *Bank of New York v. Tri Polyta Fin. B.V.*, No. 01 Civ. 9104 (LTS)(DFE), 2003 WL 1960587, at *1 (S.D.N.Y. April 25, 2003)

(diversity present in a breach of contract claim brought by an indenture trustee against two foreign corporations); *Verex Assurance, Inc. v. First Interstate Bank of California*, No. 93-1949, 1994 WL 499619, at *2 n.2 (5th Cir. Aug. 22, 1994) (indenture trustee removed the case to district court based on diversity of citizenship); *Indus. Valley Bank & Trust Co. v. Dilks Agency*, 751 F.2d 637, 638 (3d Cir. 1985) (diversity jurisdiction in a case involving an indenture trustee); *Bremer Bank, N.A. v. John Hancock Life Ins. Co.*, Civ. No. 06-1534 (ADM)(JSM), 2007 WL 1057056, at *5 (D. Minn. April 9, 2007) (joinder of indenture trustee would not destroy diversity jurisdiction).

The *Fleet* case – and common sense – are directly on point here.  First, M&T, in its own name, brings this action against HSBC and U.S. Bank in their capacity as indenture trustees seeking declarations that HSBC and U.S. Bank are not entitled to funds for either their fees and expenses, or for the benefit of the Senior Note Holders.  M&T – itself an indenture trustee – has not sued the Senior Note Holders directly, because M&T recognizes that the means of enforcing the rights it seeks in its Complaint is by a declaratory action against the Senior Notes Trustees, who are the ones claiming that the Senior Note Holders are entitled to post-petition interest (Count I); breach of contract damages (Count II); and fees (Count III).  *See* Compl. ¶¶ 52, 60, 66.  If that were not the case, M&T's holders would have sued the Senior Note Holders directly.

Second, the Senior Notes Indentures at issue contain all the provisions the *Fleet* court relied on in holding that the citizenship of the indenture trustees controls.  The Senior Notes Indentures provide that the Senior Notes Trustees may accelerate the notes (Section 5.2), pursue any remedy to collect payment of principal and interest (not limited to actions against the Debtor, *see* Mot. to Remand at 10) or to enforce the performance of any provision of the Notes

or the Indentures (Section 5.3) and recover in their own name as trustees of express trusts (Section 5.8).  *See* Horwitz Decl. Exhs. A-D at §§ 5.2, 5.3, 5.8; Rivero Decl. Exh. A at §§ 5.2, 5.3, 5.8.  As in *Fleet*, Section 5.6 of the Senior Notes Indentures also imposes five requirements on the Senior Note Holders before they can sue on their own behalf.[7]  Under this provision, the Senior Note Holders have no right under the Senior Notes Indentures to enforce remedies, unless and until the Senior Notes Trustees refuse to do so.[8]

To get around its many hurdles, Plaintiff appears to claim that because the Senior Notes Trustees *could* be directed, they are not the real party in interest.  Even if direction provisions were relevant, which the reasoning of *Fleet* established they are not, Plaintiff's logic fails.  First, it should be noted that neither of the Senior Notes Trustees have been directed by a majority of their holders, or even, by any of their holders.  *See* Horwitz Decl. ¶ 3; Rivero Decl. ¶ 14.  Second, Plaintiff quotes only a limited portion of Section 5.5 claiming that the Senior Notes Trustees may be directed by a majority in principal amount of the Senior Note Holders and thus are somehow "naked trustees."  Section 5.5 reads in its entirety as follows:

---

[7]  A Securityholder may pursue a remedy with respect to this Indenture or the Securities *only if:*
(a) the Holder gives to the Trustee written notice of a continuing Event of Default;
(b) the Holders of at least 25% in principal amount of the Securities make a written request to the Trustee to pursue the remedy;
(c) such Holder or Holders offer to the Trustee security reasonably satisfactory to it or indemnity against any loss, liability or expense;
(d) the Trustee does not comply with the request within 60 days after receipt of the request and the offer of security or indemnity; and
(e) the Holders of a majority in principal amount of the Securities do not give the Trustee a direction inconsistent with the request during such 60-day period.
*See* Horwitz Decl. Exhs. A-D at § 5.6; Rivero Decl. Exh. A at § 5.6 (emphasis added).

[8]  M&T's attempt to distinguish the *Fleet* case on the basis that that case "was clearly [an action] to collect principal and interest from TWA" has no basis in law.  Mot. to Remand at 10.  Both involve actions to enforce the indenture.  Both *Navarro* and *Fleet* stand for the principle that in determining the rights of a trustee, the court is to look to the governing indenture.  Regardless of the relief sought (against the Debtor or otherwise), so long as the indenture trustee is so empowered, the trustee is the real party in interest when suing on behalf of the beneficiaries.  M&T cites no cases that challenge this proposition.

> The Holders of a majority in principal amount of the Securities may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it.  However, the Trustee may *refuse to follow any direction* that conflicts with law or this Indenture, or, subject to Section 6.1, that the Trustee determines is unduly prejudicial to the rights of other Securityholders, or would involve the Trustee in personal liability; <u>provided</u>, <u>however</u>, that the Trustee *may take any other action deemed proper by the Trustee* that is not inconsistent with such direction.  Prior to taking any action hereunder, the Trustee shall be entitled to indemnification reasonably satisfactory to it against all risk, losses and expenses caused by taking or not taking such action.  Subject to Section 6.1, the Trustee *shall be under no obligation* to exercise any of the rights or powers vested in it by this Indenture at the request or direction of the Securityholders pursuant to this Indenture, unless such Securityholders shall have provided to the Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which might be incurred in compliance with such request or direction.

Horwitz Decl. Exhs. A-D at § 5.5; Rivero Decl. Exh. A at § 5.5 (emphasis added).  Section 5.5

expressly permits the Senior Notes Trustees to refuse to follow any such direction if they deem

the direction to be contrary to law, contrary to the Indenture, prejudicial to the non-directing

holders, or if they are not offered indemnity from the directing Senior Note Holders satisfactory

to them.  *See id.*

Moreover, M&T is simply incorrect when it claims that "[n]either HSBC nor U.S.

Bank seek[] to defend any corporate interest of its own."  Mot. to Remand at 9.  M&T is well

aware of the direct interest HSBC and U.S. Bank have in the payment of their fees and expenses,

because M&T, in its Complaint, asserted a claim for declaratory relief seeking  "a judgment

declaring that the [Subordinated] Notes are not subordinate to the payment of *any fees and

expenses incurred by the Senior Notes Trustees or the Senior Note Holders*…"  Compl. ¶ 66

(emphasis added).  Regardless of what M&T alleges, the relevant indentures provide that the

Senior Notes Trustees themselves have a contractual right to fees and expenses.  *See, e.g.,*

Horwitz Decl. Exhs. A-D at § 6.7; Rivero Decl. Exh. A at § 6.7. Additionally, Section 5.10

provides that if the Senior Notes Trustees collect any amounts pursuant to any actions taken to

enforce remedies, then such amounts will be paid first to the Senior Notes Trustees for their fees

and expenses, and then to the Senior Note Holders on account of the Senior Notes. *See id*. at §

5.10. Therefore, the Senior Notes Trustees are contractually entitled to fees.

Similarly, HSBC and U.S. Bank have a direct interest in fulfilling their post-

default obligation to "exercise those singularly conferred prerogatives in order to secure the basic

purpose of any trust indenture, the repayment of the underlying obligation." *Philip v. L.F.

Rothschild & Co.*, No. 90 Civ. 0708 (WHP), 2000 WL 1263554, at *5 (S.D.N.Y. Sept. 5, 2000).

Accordingly, Defendants have a direct "corporate interest" in their prosecution of this claim on

behalf of their holders, and, indeed, pursuant to their post-default duty, are obligated to act as a

fiduciary to protect those interests. *See infra* fn.11.

**B.**    **Plaintiff's Authority Is Inapposite**

Without any on-point authority, M&T is forced to construct an argument relying

on five cases that involve not indenture trustees, but business trusts, collection agents, and a

corporation acting pursuant to a letter agreement. Even so, three of those five cases held that the

citizenship of the trustee – and not of the beneficiary – controls for diversity purposes.

M&T relies on *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), which held that

the trustees of a business trust were the real parties in interest, for its argument that this Court

should find that the citizenship of the Senior Note Holders controls. Contrary to Plaintiff's

argument, the *Navarro* holding supports Defendant. There, the subject trustees were "eight

individual trustees of Fidelity Mortgage Investors, a business trust organized under

Massachusetts law." *Id.* at 459. Among other things, the *Navarro* trustees "have power to

transact Fidelity's business, execute documents, and 'sue and be sued in the name of the Trust or

in their names as Trustees of the Trust' … and initiate or compromise lawsuits relating to the trust's affairs." *Id*. The Supreme Court held that in this situation, the trustees were the real parties in interest, in part because "they control the litigation." *Id*. at 465. In so doing, the Court held that there was no reason to disturb the fact that "[f]or more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id*. at 465-66. That should certainly be the case here for Defendant trustees. *See also Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 207 (3d Cir. 2007) (cited by M&T, and holding on the facts of that case, the citizenship of the sole beneficiary, a corporation, and trustee, an individual, of business trust, controlled for diversity purposes).

It is also important to note that *Navarro* and *Emerald Investors Trust* involve business trusts. Business trusts are unique creatures and are entirely different from indentures. "Business trusts are *sui generis* (a particular type of entity), and hybrid in nature, savoring of both corporations and partnership, but which are neither." 12A *C.J.S. Business Trusts* § 2 (2008) (emphasis added). The purpose of the business trust is "not to hold and conserve particular property, but to conduct a business." 16A *Fletcher Cyc. Corp*. § 8228 (2007); *see also* 12A *C.J.S. Business Trusts* § 2 ("[a] business trust is nothing more than an attempt to use the old common-law trust for the purpose of conducting business enterprises"). "As a general rule business trusts are created entirely by the act of the parties. They are not organized under, and do not depend on, any statute or statutory sanction for their existence." 16A *Fletcher Cyc. Corp*. § 8228.

Indentures are different. First, indenture trustees do not conduct a business but rather act pursuant to a federally-qualified indenture. Second, an indenture is not created for

purposes of running a business like a business trust; rather, as Plaintiff cites, an indenture is "a contract entered into between a corporation issuing bonds or debentures and a trustee for the holder of the bonds or debentures which, in general, delineates the rights of the holders and the issuer." Mot. to Remand at 7 (quoting *UPIC & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F. Supp. 448, 450 n.2 (S.D.N.Y. 1992)). Third, Plaintiff entirely ignores that the Senior Notes Trustees have a post-default duty to act prudently "to secure the basic purpose of any trust indenture, the repayment of the underlying obligation." *Philip,* 2000 WL 1263554, at *5. *See also Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, No. 98 Civ. 6907 (MBM), 2000 WL 877004, at *1 (S.D.N.Y. June 30, 2000) ("An indenture trustee breaches its fiduciary duty when it fails to abide by the indenture.").[9]

      M&T's other cases do not support its argument. *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 859 (2d Cir. 1995), involved a nonprofit collection agent for transactions between air carriers and travel agents. The court found that the twenty-nine air carriers (corporations) were the "real and substantial parties" to the action and that the citizenship of the individual air carriers controlled. *Id.* at 862. However, as set forth above, HSBC and U.S. Bank, as indenture trustees, are more than just collection agents acting pursuant to a power of attorney, who "function as a clearinghouse and collection agent." *Id.* at 859. Likewise, *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003), involved a corporation acting as agent for individuals under a letter agreement (and ultimately found that the corporation's citizenship controlled). Finally, *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr.*

---

[9]    Consistent with this, Section 6.1 of the Senior Notes Indentures expressly imposes a duty after an event of default upon the Senior Notes Trustees to "exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise, as a prudent Person would exercise or use under the circumstances in the conduct of his own affairs." *See* Horwitz Decl. Exhs. A-D at § 6.1; Rivero Decl. Exh. A at § 6.1.

*Co.*, 375 F. Supp. 2d 257, 264-65 (S.D.N.Y. 2005), supports Defendants' position since there the court held that the citizenship of a trustee of a creditor trust established by order of the bankruptcy court controlled (as opposed to the citizenship of the beneficiaries).

### C.   The Citizenship Rules Proposed by Plaintiff Are Impractical and Contrary to the Principles Espoused by the United States Supreme Court

Plaintiff asks this Court to rule that in diversity jurisdiction cases where indenture trustees are parties, it is the citizenship of the individual beneficial holders of the notes, rather than that of the indenture trustees, that governs.  As a practical matter, the application of such a rule would be entirely unworkable and runs afoul of the principles espoused by the Supreme Court in *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303 (2006).

As is the case in most public bond issuances, the Senior Notes Indentures provide that each series of Senior Notes is publicly traded and held in book entry form.  *See* Horwitz Decl. Exhs. A, D at §§ 1.1, 2.6, Exhs. B, C at §§ 1.1, 2.7; Rivero Decl. Exh. A at §§ 1.1, 2.7.  To be held in "book entry form" means that the registered holder of the Global Note for all of the series is the Depository Trust Company ("DTC").  *See* Rivero Decl. ¶¶ 7, 8.  DTC is a securities clearing agency with member banks and other financial institutions, who are nominee holders holding securities on behalf of other nominee holders.  *See id.* ¶¶ 8, 12, 13.  Actual beneficial holders of the notes are usually several levels down from the registered holder level.  *See id.* ¶¶ 8-13.  DTC, though the record holder of the Senior Notes, is only a nominee holder and is not the actual stakeholder.  *See id.*  Because of these various levels of holdings, the identities of the beneficial holders are not known to the indenture trustee, unless such entities affirmatively identify themselves to the indenture trustee.  *See id.*

Using Plaintiff's logic, the Court should look beyond the representatives to the actual beneficial holder to determine citizenship.  Thus, one would have to look beyond not only

the indenture trustee, but also DTC, and the other layers of representative holders, all the way down to the level of beneficial ownership. Beneficial holders could number in the thousands or more.

Besides the fact that these entities are not known to the Senior Notes Trustees, interests in the Senior Notes are tradeable. Horwitz Decl. ¶¶ 4, 5; Rivero Decl. ¶ 14. Because notes trade, the beneficial holders change over time, and even if all of their identities could be known at any given time, they may change day to day, or within any given day. Whether or not diversity jurisdiction exists should not depend on the fortuity of the citizenship (if ascertainable) of the securities holders upon the commencement of an action by an indenture trustee.

The rule proposed by Plaintiff would fly in the face of principles established by the Supreme Court. Since 100% of the beneficial holders are usually not known (*see* Horwitz Decl. ¶ 4; Rivero Decl. ¶ 14), an indenture trustee would almost never be able to satisfy diversity jurisdiction if in order to do so it were required to set forth the jurisdiction for each and every one of the beneficial noteholders for which it acts. As a result, an indenture trustee's ability to access the federal courts would be substantially impaired, which would directly contradict the policy espoused by the Supreme Court in *Wachovia*. 546 U.S. at 319. The *Wachovia* court rejected the argument that a national bank is a citizen of every state where it has a branch, because, among other reasons, such an interpretation would "render[] national banks singularly disfavored corporate entities with regard to their access to federal courts." *Id.* Likewise, using Plaintiff's logic, an indenture trustee might never be able to avail itself of the federal courts because it will not be able to satisfy the burden of establishing the citizenship of all of the beneficial holders, because the beneficial holders' identities are not known, and the identities of the beneficial holders could shift whenever the notes are traded. Such a result is in direct conflict

with *Wachovia*, and is impractical, unworkable, not intended by the law governing diversity

jurisdiction, and would manifestly disfavor indenture trustees and their bondholders.

       The more practical, and legally appropriate, rule is the one that has been followed

by federal courts through the years in allowing indenture trustee's access to the federal courts:

diversity jurisdiction is determined by looking at the indenture trustee's citizenship. [10]

## II.    THIS CASE WAS PROPERLY REMOVED BECAUSE THERE IS COMPLETE DIVERSITY OF CITIZENSHIP

       In spite of the settled law in the Supreme Court's decision in *Wachovia Bank,*

*N.A. v. Schmidt,* 546 U.S. 303 (2006) and despite the decision of this Court in *Excelsior Funds,*

*Inc. v. JPMorgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006), the Plaintiff now

asks this Court to overrule those decisions and grant its Motion to Remand.  Plaintiff admits that

HSBC's Articles of Association list Wilmington, Delaware as its main office and that under the

*Wachovia/Excelsior Funds* analysis, HSBC is a citizen only of Delaware.[11]  The Plaintiff raises

the identical arguments the Southern District of New York, by Judge Koeltl, rejected and asks

that this Court not find diversity because Plaintiff asserts that HSBC's principal place of business

is New York.  *See* Mot. to Remand at 12.  Plaintiff's request should be denied.  The controlling

law on the issue of the citizenship of national banking associations for the purposes of

establishing diversity jurisdiction is *Wachovia*, which requires that this Court find that the

---

[10]    This Court should not order discovery concerning the issue of diversity. For the reasons explained herein, the citizenship of the indenture trustees – HSBC and U.S. Bank – controls. *See Connecticut Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991) ("there is absolutely no merit to the claim that CNB is a 'naked trustee' and further discovery will not change this conclusion.").  Plaintiff's claim that the citizenship of the holders controls necessitates a fishing expedition to discover the identity of not only HSBC's and U.S. Bank's holders, but also M&T's holders.  As explained, predicating diversity on the citizenship of the holders is impracticable given that DTC holds the debt, which interest is tradeable.  *See supra* pp. 16-17.

[11]    U.S. Bank's Articles of Association list Cincinnati, Ohio as its main office.  Rivero Decl. Exh. B. Plaintiff does not challenge that there is diversity as to Defendant U.S. Bank.

citizenship of HSBC is that of its main office as designated in its Articles of Association. 546 U.S. at 307. That state is Delaware. Horwitz Decl. Exh. E. The *Wachovia* decision found that the location of a national bank's designated main office is the sole criterion for determining citizenship. 546 U.S. at 307. *Wachovia* has been followed by this and other Courts.

Virtually every court addressing *Wachovia* has held that the citizenship of a national bank is the bank's main office as designated in its Articles of Association. For example, in *Halifax Corp. v. Wachovia Bank, N.A.*, No. 05-1952, 2006 WL 1818202, at *1 (4th Cir. June 28, 2006), the Fourth Circuit followed *Wachovia's* holding that "a bank is 'located' in the state designated in its articles of association as its main office under § 1348," and explained that "[w]hen the Supreme Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review." In *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), the Seventh Circuit (which had issued the *Firstar* opinion relied on by Plaintiff), in a case regarding the application of different tests for diversity jurisdiction, also followed *Wachovia* and held that "national banks are citizens only of the states in which their main offices are located." *See also Hinton v. Wachovia Bank of Delaware Nat'l Ass'n*, No. 05-5750, 2006 WL 1751293, at *2 n.6 (6th Cir. June 27, 2006).

Several federal district courts have similarly followed *Wachovia* to find that the citizenship of a national bank is the state of its designated main office. *See, e.g., Cavadi v. Bank of America, N.A.*, No. 07-cv-224 (PB), 2007 U.S. Dist. LEXIS 80346, at *3-4 (D.N.H. Oct. 30, 2007); *Bremer Bank, N.A. v. John Hancock Life Ins. Co.*, Civ. No. 06-1534 (ADM)(JSM), 2007 WL 1057056, at *5 (D. Minn. Apr. 9, 2007); *Castelo v. Nat'l City Bank of Midwest*, No. 06-

2078, 2006 WL 2325101, at *2 (C.D. Ill. Aug 9, 2006); *Prime Fin. Servs., LLC v. Bank One, NA*, No. 1:04-CV-414, 2006 WL 335769, at *1 n.1 (W.D. Mich. Feb. 14, 2006).

Thus, Plaintiff's argument that the pre-*Wachovia* holdings of *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001) and *Horton v. Bank One, N.A.*, 378 F.3d 426 (5th Cir. 2004) were "left standing" and are still good law is simply wrong. Mot. to Remand at 14. In essence, Plaintiff argues that because these decisions were not technically overruled by *Wachovia*, their interpretation of 28 U.S.C. § 1348 is still valid. However, what the Supreme Court did in *Wachovia* was to consider the rationales of the *Firstar* and *Horton* decisions and reject them in place of its own unitary interpretation of the scope of § 1348.

In deciding *Wachovia*, the Supreme Court considered but ultimately rejected the approach of both the Fourth and Second Circuits, which had adopted the test that a national banking association was a citizen of each state in which it had a branch office, and the approach of the Fifth (*Horton*) and Seventh (*Firstar*) Circuits, which had interpreted "located" to mean the state of a bank's principal place of business *and* its designated main office. Instead, the Court adopted its own interpretation of "located," which the Court found to mean only the state of the main office of a national bank as designated in its Articles of Association. *Wachovia*, 546 U.S. at 307. The Court based its interpretation on the language and history of 28 U.S.C. § 1348. *Id.* at 309-312. The Court was also guided at oral argument by the Office of the Solicitor General on behalf of the Office of the Comptroller of the Currency (the "OCC"), whose position at oral argument supported a finding that "located" under § 1348 meant one place, the national association's designated main office, according to its Articles of Association. As the decision in *Excelsior Funds* noted, discussed *infra*, the OCC's interpretation at oral argument (as opposed to the earlier written position cited by Plaintiff which the OCC repudiated at oral argument)

supports the accurate historical reading of § 1348 and § 1332(c)(1).  As the Solicitor General stated at oral argument in *Wachovia* that "[w]e [the OCC] don't think that a national banking association is a citizen of the State in which its principal place of business is found, insofar as that might be different from the State in which its main office is located."  *Excelsior Funds*, 470 F. Supp. 2d at 320 (*citing Wachovia*).

   Moreover, only six days after issuing its opinion in *Wachovia*, the Supreme Court declined certiorari in the *Horton* case, which had expressly adopted the dual-location standard for determining the citizenship of a national bank.  By declining certiorari, the Court effectively indicated it had settled the disagreement among the circuit courts over the meaning of "located" under § 1348, and that "located" would mean "the State designated in [a national bank's] articles of association as its main office."  *Wachovia*, 546 U.S. at 318.

   Ten months after the Supreme Court's decision in *Wachovia*, Judge Koeltl was confronted with the identical arguments to the ones presented here, namely whether the citizenship of a national bank should include the state of its principal place of business if that state is different from the state of its designated main office, and whether the dual-citizenship rationale in the *Firstar* and *Horton* decisions should be followed.  In *Excelsior Funds*, plaintiffs sued defendant JP Morgan Chase Bank, N.A. ("JP Morgan"), for state law claims in New York state court.  470 F. Supp. 2d at 312-13.  Defendant JP Morgan was a national banking association with its designated main office in Ohio and its principal place of business in New York.  *Id.* at 313.  The defendant removed the suit to the federal district court in the Southern District of New York, and the plaintiffs filed a motion to remand on the ground that removal was improper because the defendant was a citizen of New York, since its principal place of business was in New York.  *Id.*  The court framed the issue before it as whether a national banking association is

a citizen only of the state of its designated main office and not where it has its principal place of

business, if that state is different from the state of its main office. *Id.*

   The plaintiffs in *Excelsior Funds* argued that the *Wachovia* opinion left open the

question of whether a national banking association's principal place of business could be used to

establish its citizenship. *Id.* at 314.  In support of their argument, the plaintiffs relied on

Footnote 9 in the *Wachovia* opinion, which stated in part that:

> To achieve complete parity with state banks and other state-
> incorporated entities, a national banking association would have to
> be deemed a citizen of both the State of its main office and the
> State of its principal place of business.  *See Horton*, 387 F.3d, at
> 431, and n. 26; *Firstar Bank, N.A.*, 253 F.3d, at 993-994.  Congress
> has prescribed that a corporation "shall be deemed to be a citizen
> of any State by which it has been incorporated *and* of the State
> where it has its principal place of business."  28 U.S.C. §
> 1332(c)(1) (emphasis added).  The counterpart provision for
> national banking associations, § 1348, however, does not refer to
> "principal place of business"; it simply deems such associations
> "citizens of the States in which they are respectively located…"

*Wachovia*, 546 U.S. at 317 n.9.  In contrast, the defendant argued that the Supreme Court in

*Wachovia* had rejected plaintiffs' argument when it noted that § 1348 did not contain an express

reference to a principal place of business.  *Excelsior Funds*, 470 F. Supp. 2d at 317.

   In analyzing this footnote, the court wrote:

> The Supreme Court certainly did not, as the plaintiffs suggest,
> endorse the "principal place of business" test articulated in *Horton*
> and *Firstar*.  On the other hand, while the footnote favors the
> defendant's position, it is difficult to read the footnote, even
> together with the Court's holding, as conclusively rejecting the
> possibility that a national bank is also a citizen of the state in
> which it has its principal place of business.  The language is
> inconclusive and it would have been unnecessary, based on the
> facts of the case, for the Supreme Court to decide the issue.  This
> footnote, therefore, does not resolve the question of whether the
> term "located," for § 1348 purposes, includes a national bank's
> principal place of business.  Yet, at the same time, the fairest
> reading of footnote nine is that the Supreme Court expressed
> skepticism over whether the term "located" in § 1348 included a

national bank's "principal place of business," in view of the
absence of such term in the statute.

*Excelsior Funds*, 470 F. Supp 2d at 317.

The court then undertook a careful and reasoned analysis of §§ 1348 and

1332(c)(1). *Id*. at 320-23. It contrasted the legislative history of § 1348 with that of

§ 1332(c)(1), and found that because § 1348 was enacted in 1948 – ten years before Congress

enacted § 1332(c)(1) – and because § 1348 contained no reference to a national bank's principal

place of business, whereas § 1332(c)(1) expressly referenced a corporation's principal place of

business, it would be erroneous to import § 1332(c)(1)'s provisions into a different earlier statute

for which Congress had a different intent and had enacted ten years previously. *Id*. As the court

wrote:

> [T]here is no clear indication that Congress ever intended to extend
> the general provision of § 1332(c)(1) to national banks. On the
> contrary, the language in § 1332(c)(1) appears not to apply to
> national banks because it provides that a corporation shall be
> deemed to be a citizen of "any State by which it has been
> incorporated." National banking associations, which are federally
> charted entities, are not incorporated by "any State." … Therefore,
> given that Congress has "discretely provided" for the citizenship of
> national banks in § 1348, the more general provision of §
> 1332(c)(1) does not apply to national banking associations.

*Id*. at 322-23 (citations omitted). The court accordingly denied plaintiffs' motion to remand. *Id*.

at 323.

The *Excelsior Funds* reasoning is persuasive and should be followed here. Judge

Koeltl's detailed exegesis of the legislative histories of §§ 1348 and 1332(c)(1) address the exact

same facts as are before this Court. As that court explained, the entire "concept of 'principal

place of business' as a test for corporate citizenship did not arise until 1958, when 28 U.S.C.

§ 1332(c)(1) was first enacted." *Id*. at 319. Indeed, the concept of "principal place of business"

did not hold legal significance for jurisdictional purposes before the enactment of § 1332(c)(1):

23

> The word located was first used in 1887 and the current version of section 1348 was enacted in 1948, which was 10 years before the concept of principal place of business had any jurisdictional salience.  That was the first time that Congress – this was in 1958 – that Congress enacted a specific provision dealing with corporate citizenship, and that's the first time we see the concept of principal place of business having relevance in the jurisdictional context.

*Id.* at 320 (*quoting Wachovia*).  Nor, the court concludes, can § 1348 be understood to retroactively incorporate a jurisdictional concept that would not come into existence until a decade later.  *Id.* at 321.  Because Congress did not include "principal place of business" in § 1348, § 1348 cannot depend in any way on a national association's principal place of business, a conclusion in accord with virtually all post-*Wachovia* courts.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.

Dated: New York, New York
        May 12, 2008

                                    KELLEY DRYE & WARREN LLP


                                    By:    _/s/ Sarah L. Reid_____
                                           Sarah L. Reid
                                           Alison L. MacGregor
                                           101 Park Avenue
                                           New York, New York 10178
                                           Telephone:  (212) 808-7800
                                           Facsimile:  (212) 808-7897

                                           *Attorneys for Defendant HSBC Bank USA,
                                           National Association, as Successor Indenture
                                           Trustee*

Dated: Hartford, Connecticut
        May 12, 2008

                                    SHIPMAN & GOODWIN LLP


                                    By:    _/s/ Marie C. Pollio_____
                                           Kathleen M. LaManna
                                           Marie C. Pollio
                                           One Constitution Plaza
                                           Hartford, Connecticut 06103
                                           Telephone:  (860) 251-5000
                                           Facsimile:  (860) 251-5212

                                           Brian Damiano
                                           DUANE MORRIS LLP
                                           1540 Broadway
                                           New York, New York 10036
                                           Telephone:  (212) 692-1000
                                           Facsimile:  (212) 692-1020

                                           *Attorneys for Defendant U.S. Bank National
                                           Association, as Successor Indenture Trustee*