**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**MANUFACTURERS AND TRADERS TRUST**
**COMPANY, as Successor Indenture Trustee for the**
**7.75% Contingent Convertible Notes Due 2015 issued**
**by Calpine Corporation,**

                                    *Plaintiff,*

              *–against–*

**HSBC BANK USA, National Association, as Successor**
**Indenture Trustee for the 7.625% Senior Notes Due**
**2006, the 8.75% Senior Notes Due 2007, the 8.75%**
**Senior Notes Due 2008, and the 7.75% Senior Notes**
**Due 2009 issued by Calpine Corporation**,

              *–and–*

**U.S. BANK NATIONAL ASSOCIATION, as**
**Indenture Trustee for the 10.50% Senior Notes Due**
**2006 issued by Calpine Corporation,**

                                    *Defendants.*

**08-CV-03093 (VM)**

**ECF Case**

## PLAINTIFF'S REPLY MEMORANDUM OF LAW

This memorandum is submitted on behalf of Plaintiff, Manufacturers and Traders

Trust Company ("M&T"), in reply to the opposing papers submitted by Defendants, HSBC Bank

USA National Association ("HSBC") and U.S. Bank, National Association ("U.S. Bank"), and in

further support of M&T's motion, pursuant to 18 U.S.C. §1447, to remand this case to the

Supreme Court of the State of New York, County of New York.

### *Preliminary Statement*

As demonstrated here and in M&T's moving papers, this action concerns the

interpretation of an indenture explicitly governed by the law of New York and should be

remanded to State Court.  Defendants do not dispute that they bear the burden of establishing

diversity jurisdiction.  Nor do they dispute that under the Supreme Court's ruling in *Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458 (1980), it is the citizenship of the real parties in interest to the controversy that determines diversity.  With respect to the issues before this Court, and consistent with the language of the indenture, the senior holders are the real parties in interest.  It is their citizenship, therefore, and not the citizenship of HSBC or U.S. Bank, that is relevant for determining diversity jurisdiction.

Defendants do not even attempt to demonstrate the citizenship of the senior holders.  Rather, Defendants ignore the express holding and plain language of *Navarro*, labeling *Navarro* as  an "irrelevant authority" because it dealt with a trustee of a "business trust" and not an indenture trustee.  Defendants propose a test for diversity in which  the citizenship of an indenture trustee automatically controls—"without any analysis of who is the real party in interest." (Opp. Br. p. 9).  No court, however, has limited the *Navarro* holding in this manner.  Instead, the *Navarro* test has been consistently applied—even in the cases cited and relied on by Defendants—to determine diversity.

This action is brought by M&T, as indenture trustee, on behalf of holders of subordinated debt of Calpine to resolve the senior debt holders' claim that they are entitled to "post-petition interest," which would be paid from a portion of the subordinated holders' bankruptcy distribution.  On behalf of the subordinated holders, M&T seeks declaratory relief that the senior holders are not entitled to "post-petition interest" under the relevant indentures, that the senior holders waived rights of subordination with respect to certain contract claims, and that the subordinated holders are not subordinated to the payment of fees and expenses incurred

by the senior holders. This is a straightforward dispute concerning contract interpretation under New York law.[1]

Accordingly, because this dispute relates solely to the relative rights of the senior and subordinated holders to this fund, HSBC and U.S. Bank are mere "naked trustees" and "conduit[s] for a remedy owing to" the senior noteholders. The senior noteholders are "the real and substantial parties to the dispute" and, in accordance with *Navarro*, their citizenship governs diversity jurisdiction. Since Defendants have not met their burden of establishing the diversity of citizenship of the "the real and substantial parties"—and, indeed, have not even attempted to meet that burden—this action should be remanded.

Diversity is also lacking because even if the indenture trustee were the real party in interest for diversity purposes, Plaintiff M&T and Defendant HSBC are both citizens of the New York for jurisdictional purposes. M&T is a New York corporation, and HSBC's "principal place of business" is located in New York.[2] HSBC and U.S. Bank are "deemed citizens of the States in which they are respectively located." 28 U.S.C. §1348. Under the Supreme Court's decision in *Wachovia Bank, N.A.  v. Schmidt*, 546 U.S. 303 (2006) and its progeny, a national bank may be "located" for diversity purposes where its "principal place of business" is located.

Contrary to Defendants' contention that *Wachovia* rejected a "two-state jurisdictional test" for determining the citizenship of a national bank, even the case principally

---

[1]  Contrary to defendants' superfluous statement that "two federal circuit court of appeals decisions of Section 510(1) of the Bankruptcy Code" are "central to the present dispute." (Opp. Br. p.5), a resolution of these issues is governed by New York Court of Appeals' decision in *Chemical Bank v. First Trust, N.A.*, 93 N.Y.2d 178; 688 N.Y.S.2d 484 (1999).  In *Chemical Bank* the Court of Appeals expressly held that under New York law, senior holders are entitled to a priority with respect to post-petition interest only if the indenture "explicitly and unambiguously" provides for such priority.  These indentures do not even mention post-petition interest.

[2]  HSBC does not deny that New York is its principal place of business.

relied on by Defendants recognized that *Wachovia* "does not resolve the question of whether the term "located" for §1348 purposes, includes a national bank's principal place of business." *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.,* 470 F. Supp. 2d 312, 217 (S.D.N.Y. 2006). Moreover, case law subsequent to *Wacovia* recognizes a "two-state jurisdictional test" for determining the citizenship of a national bank that includes reference to a national bank's principal place of business. As set forth in its moving papers, M&T submits that this is the better approach, because it prevents parties such as HSBC from manufacturing purported diversity where, in reality, parties on both sides of the dispute reside in the same state. For all these reasons, this case should be remanded to State Court.

## POINT I

### THE CITIZENSHIP OF THE SENIOR AND SUBORDINATED NOTEHOLDERS, AND NOT THE CITIZENSHIP OF THE TRUSTEES, DETERMINES DIVERSITY

In *Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458, 465 (1980), the Supreme Court held that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage and dispose of assets for the benefit of others." Trustees who "act as 'mere conduits' for a remedy flowing to others," are "naked trustees" and *not* "real and substantial" parties to the controversy. *Id*. Defendants do not— because they cannot—dispute that under this test, in order for a trustee's "citizenship" to ground diversity jurisdiction, the trustee must be a "real and substantial" party to the controversy. Rather, they argue that a trustee must be deemed a "real and substantial" party any time it is empowered to enforce remedies, regardless of the particular relief sought. (*See* Opp. Br. at 11 n.8). But *Navarro* requires case-by-case analysis that looks to the language of the indenture and

the particular relief being sought to determine whether the trustee is the real party in interest or is

merely acting as a "'conduit' for a remedy flowing to others." *See id*. at 464.

        Defendants argue that *Navarro* is "inapposite" because it involved a business

trust, and that for the purpose of determining diversity of citizenship, a distinction exists between

trustees of business trusts and indenture trustees.  But this argument gives no comfort to

Defendants because *Navarro* makes no such distinction.  Courts in the Second Circuit have

consistently applied the *Navarro* test to all manner of trustees and representatives, without

distinction.  *See, e.g. Airlines Reporting Corp. v. S & N Travel,* 58 F.3d 857 (2d Cir. 1995);

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co*., 375 F. Supp. 2d 257 (S.D.N.Y. 2005).

        Accordingly, Defendants cannot claim that "Courts have consistently looked to

the citizenship of the indenture trustee for diversity purposes without analysis of who is the real

party in interest." (Opp. Br. p. 9).  In fact, in the case principally relied on by defendants, *Fleet*

*Nat'l Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510 (S.D.N.Y. 1991), the Court applied the

*Navarro* analysis to an indenture trustee holding that, under the particular facts there, the

citizenship of that indenture trustee was relevant for diversity purposes because it was not a

"naked trustee under the *Navarro Savings* analysis."  *Id*. at 514.

        Defendants' assertion that indentures at issue "contain all the provisions the *Fleet*

court relied on in holding that the citizenship of the indenture trustees controls" is unpersuasive

(*See* Opp. Mem. p. 10).  The indenture provisions alluded to by Defendants solely related to a

dispute with the issuer of the debenture regarding the collection of defaulted payments.  *Id*. at

512-13.  On the other hand, the present dispute involves the relative rights of the senior and

subordinated debt holders under the terms of the governing indentures, and under the terms of

those indentures, Defendants do not have the right, as did the trustee in *Fleet*, "to pursue remedies at law and equity and to recover in its own name as trustees of an express trust." *See id*. at 515.

Nor do the other cases relied on by Defendants stand for the proposition urged by Defendants.  For example, in *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd*., 536 U.S. 88 (2002) the plaintiff was *not* "an indenture trustee suing on behalf of its holders," but a bank suing to collect on loans it had made in its individual corporate capacity directly to the defendant.  Similarly, in *Industrial Valley Bank & Trust Co. v. Dilks Agency*, 751 F.2d 637 (3d Cir. 1985) the plaintiff was not suing in its capacity as indenture trustee, but to recover losses that it had incurred in its individual corporate capacity.  Finally, in *Bremer Bank, N.A. v. John Hancock Life Ins. Co*., 2007 U.S. Dist. LEXIS 26007 (D. Minn. April 9, 2007), the indenture trustee referred to in the case was not a party to the litigation.  The plaintiff was an "Owner Participant" and the defendant was the holder a majority "of the outstanding principal amount of the Secured Certificates."  *Id*. at *3.

Defendants cannot therefore seriously dispute that this Court is required by *Navarro* to determine whether each of HSBC and U.S. Bank possess "customary powers to hold, manage, and dispose of assets for the benefit of others" in order to determine whether each is "a real party to the controversy for purposes of diversity jurisdiction." *Navarro*, 446 U.S. at 464. Applying the *Navarro* analysis to the respective debentures, as set forth in M&T's main memorandum (pp. 10-11), establishes that HSBC and U.S. Bank are "more like a stakeholder" possessing ministerial duties rather than parties possessing the "customary powers" of a trustee. Defendants do not dispute that neither of them "has legal title to any trust assets" or the right to "control the litigation."  Nor do defendants dispute that none of the securities issued pursuant to the terms of the subject trust indentures are held or registered in HSBC's or U.S. Bank's name, or

that neither has exclusive control over any action or proceeding, including this action. Although Defendants claim that their contractual right to fees and expenses gives them an interest in this litigation, those fees and expenses will be paid regardless of the outcome; the only question is whether the monies come from the Senior or Subordinate noteholders. (Moving Exhibits C-G, Section 6.7, p. 22).

Thus, based upon the principles laid down by the Supreme Court in *Navarro*, it is not the citizenship of HSBC or U.S. Bank that controls for diversity purposes because, in the circumstances of this case, they are "naked trustees" and are "disinterested in the outcome of the litigation in the sense that [they] will not be materially affected by it." *Alberto-Culver Co. v. Sunstar, Inc.,* 2001 U.S. Dist. LEXIS 17102 (N.D. Ill. Oct. 17, 2001). Instead, it is the citizenship of the senior holders that controls, as they are "the real and substantial parties to the dispute." *Navarro*, 446 U.S. at 465. Since Defendants fail to meet their burden of demonstrating (and do not even allege) the citizenship of the senior holders, this case must be remanded to State Court.

This result cannot be altered by Defendants' claim that "it would be utterly impractical and arbitrary to look to holders" of beneficial interests in Senior Notes because such interests are subject to active trading, and the identity of the holders may change." (Op. Br. p.8). This argument fails because diversity is determined at one precise point in time—the date the action is commenced. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). Similar problems have been claimed to exist with respect to the citizenship of unincorporated associations; the courts have uniformly rejected those arguments. *See, e.g., United Steelworkers of America v. R. H. Bouligny, Inc.,* 382 U.S. 145, 146-150 (1965) (rejecting an argument that it would be unfair and poorly executed judicial administration to determine citizenship of an unincorporated labor union by examining the citizenship of its members because such arguments

are best addressed by Congress); *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 302 (2d Cir. 1994) (holding that the "citizenship of an unincorporated association…is determined by the citizenship of *each* of its members"); *Indiana Gas Co. v. Home Ins. Co*., 141 F.3d 314, 317 (7th Cir. 1998) (explaining that "[g]eneral partnerships, limited partnerships, joint stock companies, and unincorporated membership associations all are treated as citizens of every state of which any partner or member is a citizen.").

**POINT II**

**HSBC IS A NEW YORK CITIZEN AND
CANNOT REMOVE THIS ACTION**

Even if HSBC's and U.S. Bank's citizenship were controlling for diversity purposes, diversity jurisdiction would still not exist because HSBC is a citizen of New York. Nevertheless, Defendants argue, based on *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) and *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006), that "the citizenship of a national bank is the bank's main office as designated in its Article of Association."  (Opp. Mem. p. 19).

Defendants do not dispute that, prior to *Wachovia*, two circuits had held that the citizenship of a national bank was determined by its principal place of business *and* its main office, as stated in its organization certificate.  *See Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir. 2004); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001).  Instead, Defendants argue that *Wachovia* stands for the proposition that "the location of a national bank's designated main office is the sole criterion for determining citizenship" (Opp. Mem. p.19).  This, however, was not the holding of *Wachovia.*

8

In *Wachovia*, the plaintiff national bank designated its "main office" in the same state where it maintained its principal place of business. *Wachovia*, 546 U.S. at 317 n.9. Accordingly, the Supreme Court was not called upon to decide, nor did it decide, whether the citizenship of a national bank could also be determined by its principal place of business. In fact, the Supreme Court acknowledged the underlying rationale in *Horton* and *Firstar*: that to "achieve complete parity with state banks and other state incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business." *Id*. Even the *Excelsior* Court recognized that *Wachovia* "does not resolve the question of whether the term "located" for §1348 purposes, includes a national bank's principal place of business," and that it was difficult to read *Wachovia* as "rejecting the possibility that a national bank is also a citizen of the state in which it has its principal place of business." *Excelsior*, 470 F. Supp. 2d at 317.

Although the *Excelsior* court held to the contrary, M&T submits that the more logical conclusion is that *Horton* and *Firstar* remain valid interpretations of the scope of §1348 and its purpose of putting national banks at "complete parity with state banks. " *See Wachovia Bank*, 546 U.S. at 317 n.9. The *Excelsior* court disregarded over 100 years of Congressional efforts to maintain this parity. The *Excelsior* decision rested almost entirely on the fact that the current version of § 1348 existed before the principal place of business test for determining the citizenship of corporations was added to 28 U.S.C. § 1332(c)(1). *See Excelsior*, 470 F. Supp. 2d at 320. But this argument ignores the U.S. Supreme Court's admonition that the "classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that *the implications of a statute may be altered by the implications of a later statute*." *United States v. Fausto*, 484 U.S. 439, 453 (1988)) (emphasis

9

added); *see also Firstar Bank*, 253 F.3d at 994 n. 5 (citing *Fausto* to explain why interpreting § 1348 by referencing § 1332(c)(1) was not incongruous).  Because Congress intended for jurisdictional parity to exist between national and state banks, changing the jurisdictional implications for § 1332(c)(1) must necessarily change the implication and interpretation for § 1348.  This conclusion has been accepted by other courts which, after *Wachovia*, have followed *Horton* and *Firstar* in holding that "national banks are deemed citizens of the state in which they are incorporated as well as the state where their principal place of business is located." *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortgage, Inc.*, 415 F. Supp. 2d 636, 641 (E.D. Va. 2006).

Therefore, for the reasons stated here and in M & T's main memorandum of law, including, as the Supreme Court recognized, the desire to achieve parity with state banks, this Court should hold that HSBC is a citizen of New York for diversity purposes, and remand this action to State Court because diversity is lacking.

### Conclusion

For all the foregoing reasons, the Court should grant  plaintiff's motion and remand this action to the New York Supreme Court, County of New York.

Dated: New York, New York
       June 6, 2008

Respectfully submitted,

___*S. Robert Schrager*_____

S. Robert Schrager
Joel M. Wolosky
**HODGSON RUSS LLP**
60 East 42nd Street
New York, NY  10165
212.661.3535

10

-and-

Rolin P. Bissell
Norman M. Powell
Elena C. Norman
Ian S. Fredericks
**YOUNG CONAWAY STARGATT
    & TAYLOR, LLP**
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600

*Attorneys for Plaintiff Manufacturers and
Traders Trust Company, as Successor
Indenture Trustee for the 7.75% Convertible
Notes due 2015 issued by Calpine
Corporation*

11